**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JANE DOE, | Case No.: |
| Plaintiff, | **JUDGE_____** |
| v. | |
| DISCORD INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT

Plaintiff Jane Doe ("Plaintiff") brings this action against Defendant Discord Inc. ("Discord" or "Defendant"), to recover damages arising from the severe injuries that Plaintiff suffered because of Discord's conduct in creating, designing, marketing, and distributing its mobile- and web-based social communication applications ("apps"), and alleges as follows:

### I.    INTRODUCTION

1.    This action seeks to hold Discord accountable for recklessly and deceptively operating its business in a way that led to the sexual exploitation of Plaintiff. The heinous acts against Plaintiff were committed by a convicted and registered sex offender whose actions were possible only because of the egregiously tortious conduct of Discord and the application it carefully and intentionally designed, marketed, and made available to the public.

2.    Through its pervasive pattern of misrepresentations about safety, Discord portrays its apps as safe and an appropriate place for children to play. In reality, and as Discord actually

knows, the design of its apps make children easy prey for pedophiles and encourages the same, and Discord had no appropriate safeguards to ensure that children were in fact safe, that predators were screened, or that known predators were not using the apps to solicit sexual favors and actions from children. There are steps that Discord could have taken to protect children and to make its apps safer. But time and again, Discord has refused to invest in basic safety features to protect against exactly the kind of exploitation that Plaintiff suffered.

3.     The reason for Discord's unlawful conduct is simple: Discord prioritizes growing the number of users of their apps over child safety. Discord has evolved from a hot startup to a mature company seeking to go public. Continuing to grow its userbase—including children users—is critical to Discord's revenue, future profitability, and the success of any initial public offering, and Discord has pursued these goals at any cost, including sacrificing the safety of the children who it entices to use its app.

4.     Plaintiff is a 19-year-old woman who was an avid user of Discord's app for several years. As a child, Plaintiff was diagnosed with selective mutism, which significantly impaired her ability to communicate verbally in social settings. Plaintiff relied heavily on Discord for entertainment and social interaction, making her a prime target for the countless child predators that Discord knew were freely roaming the app looking for vulnerable children.

5.     When Plaintiff was seventeen (17) years old, she was manipulated and groomed through Discord's dangerous app by a convicted sex offender who exploited her vulnerabilities and sexually abused her. The predator sent Plaintiff graphic messages describing sexual acts he intended to do to her, sent her sexually explicit images of himself, coerced her into sending graphic, sexually explicit images and videos of herself, and made multiple attempts to meet Plaintiff in person.

6.     Plaintiff suffered this sexual exploitation and abuse as the direct result of Discord's conduct. For years, Discord has misrepresented and deliberately concealed information about the pervasive predatory conduct that its app enables and facilitates. Had Discord disclosed the truth of what was really occurring on its app, Plaintiff's mother would never have permitted Plaintiff

2

to use the app. Had Discord taken any steps to screen users before allowing them on the apps, Plaintiff would not have been exposed to the large number of predators trolling the platforms. Had Discord implemented even the most basic system of age and identity verification, as well as other common sense safety measures, the predator would have never engaged with Plaintiff and Plaintiff would not have suffered the harm alleged herein.

7.    Plaintiff has suffered unimaginable harm. Her innocence has been snatched from her forever. Tragically, what happened to her is far from an isolated event. Indeed, Plaintiff is just one of countless children whose lives have been devastated as a result of Discord's gross negligence and defectively designed app. This action, therefore, is not just a battle to vindicate Plaintiff's rights—it is a stand against Discord's systemic failures to protect society's most vulnerable from unthinkable harm in pursuit of financial gain over child safety.

## II.    PARTIES

### A.    Plaintiff

8.    Plaintiff Jane Doe is a citizen and resident of the State of Ohio, with a principal place of residence in Lorain County.

     a.    Due to the sensitive and intimate nature of the circumstances of child sexual abuse that gave rise to this lawsuit, Plaintiff Jane Doe requests that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit her to proceed under a pseudonym and to ensure that Defendant maintains the confidentiality of Plaintiff's indentity throughout the pendency of this litigation.[1]

     b.    Generally, under the Federal Rules of Civil Procedure, pleadings must state the names of all parties.[2] However, there are exceptions when the issues involved are

---

[1] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).

[2] Fed. R. Civ. P. 10(a).

of a sensitive and highly personal nature.[3] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense.

c.   Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including child sexual abuse and child sexual abuse material. Plaintiff fears the stigma from her family, friends, employer, and community if her true identity is revealed in the public record.

d.   Plaintiff should not be compelled to disclose her identity in order to maintain her privacy and safety. Plaintiff's privacy interest substantially outweighs the customary practice of judicial openness.[4]

e.   Moreover, Defendant will not be prejudiced. Plaintiff will agree to reveal her identity to Defendant for the limited purpose of investigating Plaintiff's claims once the parties have entered into a protective order. Plaintiff simply seeks redaction of Plaintiff's personal identifying information from the public docket and assurances that Defendant will not use or publish Plaintiff's identity in a manner that will compromise her safety, personal life, personal relationships, or future employment prospects.

9.   Plaintiff has suffered profound and enduring harm. This includes significant emotional distress, psychological trauma, and mental anguish. Plaintiff's experiences have led to a loss of trust, safety, and personal security, depriving her of the opportunity for a normal and

---

[3] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. See, e.g., *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); Doe v. Frank, 951 F.2d 320, 323–24 (11th Cir.1992); *Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); see also *Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).

[4] Fed. R. Civ. P. 26(c)

healthy development. The injuries she sustained are severe, ongoing, and permanent, affecting her daily life and emotional health in lasting and immeasurable ways.

10. Plaintiff never entered into any contract with Discord. To the extent Discord claims that Plaintiff attempted to accept an electronic terms and conditions clause by clicking buttons on a screen that included language that Plaintiff did not read or understand, such an assertion is legally erroneous, invalid, and unenforceable, including because Plaintiff disaffirms any contract that she may have entered as a minor, including any forced arbitration agreement and any delegation clause in any contract; Plaintiff lacked the capacity to enter any contract, including any forced arbitration agreement and any delegation clause in any contract; and any arbitration agreement is invalid and unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act, Pub. L. No. 117–90, codified at 9 U.S.C. §§ 401-402.

**B.     Defendant**

11. Defendant Discord Inc. is a Delaware corporation with its principal place of business in San Francisco, California. Discord owns, operates, controls, produces, designs, maintains, manages, develops, tests, labels, markets, advertises, promotes, supplies, and distributes the Discord app and all apps at issue in this case. Discord is widely available to consumers throughout the United States.

12. Discord maintains a registered agent in Ohio, and can be served through its registered agent C T Corporation System at 4400 Easton Commons Way, Suite 125, Columbus, OH 43219.

### III.     JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a) because Plaintiff and Discord are citizens of different states and the amount in controversy exceeds $75,000.

14. The Court also has subject-matter jurisdiction over this matter under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

15.     This Court has personal jurisdiction over Discord because the wrongful conduct giving rise to the causes of action took place within this Court's jurisdiction.

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides within this District and a significant part of the acts and omissions giving rise to the cause of action occurred in this District.

## IV.     FACTUAL ALLEGATIONS AS TO DISCORD

### A.     Discord Offers a Communications App That It Markets to Children.

17.     Discord is a communications app that allows users to chat over voice, video, and text messaging. Discord is organized into chat groups called "servers," which are topic-based virtual spaces that users can join to engage in conversations with others. Servers are organized into subtopics called "channels," which are divided into text and voice channels. In text channels, users post messages, upload files, and share images. In voice channels, users communicate through voice or video chat and screen share. Users can also send private messages via voice, video, or text. The social and communication app targets and is used by children.  It is also used by adults.

18.      Launched in 2015, Discord quickly became the top app for gamers looking to communicate while playing videogames. The company's founders were into video games and created a service for gamers to seamlessly communicate with each other. Discord has since expanded to include a wider audience of anyone looking to communicate with others about an endless array of topics. As Discord puts it, "Discord is now where the world talks, **hangs out, and builds relationships**"—"Discord lets **anyone** create a space to find belonging." (Emphasis added.)[5]

19.     Although many users on Discord are adults, Discord directly markets its app to young users and children. For example, Discord advertises its functionality for school clubs and offers "Student Hubs," which are "dedicated places for students on Discord that make it easy to

---

[5] Discord, *Create Space for Everyone to Find Belonging*, https://discord.com/company (last visited Feb. 11, 2025).

meet classmates from your own school, discover their communities on Discord, and share your servers for your fellow classmates to join."[6] Discord also markets to young users with features such as "custom emoji, stickers, soundboard effects and more to add your personality to your voice, video or text chat."[7] According to Discord, these features are designed to "make your group chats more fun."[8]



*Example of a custom emoji from Discord's website.*[9]

20.     In recent years, Discord has exploded in popularity among young users, driven in part by the pandemic. As *The New York Times* explained in its article *How Discord, Born from an Obscure Game, Became a Social Hub for Young People*, "While adults working from home flocked to Zoom, their children were downloading Discord to socialize with other young people through text and audio and video calls in groups known as servers."[10] Given this influx of young people, which has only grown since the pandemic, the average age of a Discord user is 16 years old.[11]

---

[6] Discord, *Discover Your Next Favorite Campus Club in Student Hubs* (Aug. 22, 2022), https://discord.com/blog/discover-your-next-favorite-campus-club-in-student-hubs.
[7] Discord, *Create Space for Everyone to Find Belonging*, https://discord.com/company (last visited Feb. 11, 2025).
[8] *Id.*
[9] Discord, *Custom Emojis*, https://support.discord.com/hc/en-us/articles/360036479811-Custom-Emojis#h_01H06JVDAV2VKZBTRGJDY8NBV7 (last visited Feb. 11, 2025).
[10] Kellen Browning, *How Discord, Born from an Obscure Game, Became a Social Hub for Young People*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord-server-social-media.html.
[11] Super League, *An Introductory Look into Discord*, https://www.superleague.com/post/an-introductory-look-into-discord.

21.     Creating an account on Discord is extremely easy. Users must provide only an email address, display name, username, password, and birthdate. Users can then access Discord for free on their computers, tablets, and cellular devices.



*Discord Sign-up Screen*

22.     While Discord's Terms of Service prohibit users under 13, Discord does not verify age or identity. As a result, countless Discord users are under 13, many of whom state their real age in their bios, tell other users their real age in chats, and post pictures showing their real age. There are children as young as eight years old using Discord.[12]

23.     Although Discord offers apparent safety features that an adult could modify for their children to use it, Discord does not default to the highest safety settings upon account creation and children can easily change the safety features at any time without oversight or

---

[12] Kellen Browning, *5 Ways Young People Are Using Discord*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord-users-gen-z.html.

restriction. For example, by default, all users, including those under 18, can receive direct messages from another user in the same server, allowing them to send and receive private messages from strangers. And even when parents set more restrictive settings, children can simply change those settings to whatever they desire at any time.

24.     Certain content on Discord is "age-restricted," meaning in theory that children under 18 cannot access it. Server owners can self-designate specific channels in a server as age restricted. For years, however, Discord did not allow server owners to self-designate entire servers as age-restricted, and so minors could easily access servers with age-restricted content even if designated age-restricted channels in the server were blocked. Discord only recently provided server owners with the ability to self-designate entire servers as age-restricted.

### B.     Discord Lures Parents into Letting Their Kids Use Discord with Promises of Safety.

25.     Since its inception, Discord has falsely assured parents that its app provides a safe place for children to spend their time interacting with others. According to Discord, "in May 2015, Discord began as a way for us to all play games together, better. And Safer."[13] "We've always wanted Discord to be a place where one could safely play games with friends."[14]

26.     For years, Discord has misrepresented that it has a "zero-tolerance policy" for anything relating to the sexual exploitation of children. For example, in Discord's July – September 2022 Transparency Report, Discord emphasized that it "has a zero-tolerance policy for anyone who endangers or sexualizes children."[15] Similarly, in a July 2023 website post titled "Discord's Commitment to Teen and Child Safety," Discord told parents that it "has a zero-tolerance policy for inappropriate sexual conduct with children and grooming," with "special

---

[13] Discord, *Discord Safety Boost* (Mar. 28, 2017), https://discord.com/blog/discord-safety-boost.
[14] *Id.*
[15] Discord, *Discord Transparency Report: July – September 2022*, https://discord.com/blog/discord-transparency-report-q3-2022.

attention given to predatory behaviors such as online enticement and the sexual extortion of children."[16]

27.     Discord mispresents to parents that its app is different from other communication product when it comes to child safety, assuring parents that "[w]e built Discord to be different and work relentlessly to make it a fun and space for teens.[17] "Discord is built on Safety," and "[s]afety is at the core of everything we do and a primary area of investment as a business."[18]

28.     Discord specifically falsely assures parents that its app is designed to keep children safe and that it defaults to safety. Discord, for instance, in a website post titled "Settling into School with Discord," informs parents that "[m]any teams across Discord work together to ensure that your teen finds belonging by building product and policies with safety by default."[19] And in a website post titled "Discord's Commitment to Teen and Child Safety," Discord promises parents that "[w]e make our product safe spaces by design and default. Safety is and will remain part of Discord's core experience."[20]

29.     Likewise, according to Discord's 2023 "Parent's Guide to Discord," Discord represents "Discord has default settings designed to keep minors safe, such as automatically scanning direct messages for explicit images and videos."[21] Those default settings, according to Discord, include "Teen Safety Assist," which (1) "automatically blur[s] media that may be sensitive in direct messages and group direct messages with friends, as well as in servers," and

---

[16] Discord, *Discord's Commitment to Teen and Child Safety* (July 11, 2023),
https://discord.com/safety/commitment-to-teen-child-safety.
[17] *Id.*
[18] Discord, *Discord's Commitment to a Safe and Trusted Experience* (May 12, 2022),
https://discord.com/safety/360043700632-discords-commitment-to-a-safe-and-trusted-experience;
https://discord.com/safety/commitment-to-teen-child-safety.
[19] Savannah Badalich, *Settling into School with Discord*, Discord (Sept. 28, 2021),
https://discord.com/safety/settling-into-school-with-discord.
[20] Discord, *Discord's Commitment to a Safe and Trusted Experience* (May 12, 2022),
https://discord.com/safety/360043700632-discords-commitment-to-a-safe-and-trusted-experience;
https://discord.com/safety/commitment-to-teen-child-safety.
[21] Discord, *Parent's Guide to Discord*, https://web.archive.org/web/20230714165101/https://connectsafely.org/wp-content/uploads/2021/09/Parents-Guide-to-Discord.pdf (archived July 14, 2023).

(2) sends "safety alerts" to teen users when they receive a direct message from a user for the first time."[22]

30.    While Discord misrepresents that its app is designed to default to safety, it simultaneously instructs parents on how to *change* the default safety settings to keep their child safe. For years, Discord has consistently assured parents that they can use the company's "tools to protect [their children] from inappropriate content or unwanted contact."[23] Discord, for example, tells parents they can turn on an "explicit image filter" that will "[a]utomatically block direct messages that may contain explicit images."[24] Discord also informs parents that they can disable the direct message setting that allows anyone in a server to privately message their children. Discord also promises parents that they can change their child's "Friend request settings" to limit who can send them a friend request—*i.e.*, "Everyone," "Friend of friends," or "Server members."[25]

31.    Discord's CEO and co-founder Eric Citron recently reiterated many these claimed assurances nearly verbatim in his January 31, 2024 testimony to the U.S. Senate as part of its hearing on "Big Tech and the Online Child Sexual Exploitation Crisis." Citron began his written testimony by stating clearly that "Discord has a zero-tolerance policy for content or conduct that endangers or sexualizes children."[26] Discord, according to Citron, "has a zero-tolerance policy for inappropriate sexual conduct with children, meaning inappropriate sexual contact between

---

[22] Savannah Badalich, *Building a Safer Place for Teens to Hang Out*, Discord (Oct. 24, 2023), https://discord.com/safety/safer-place-for-teens.

[23] Discord, *Helping Your Teen Stay Safe on Discord* (May 12, 2022), https://discord.com/safety/360044153831-helping-your-teen-stay-safe-on-discord; Discord, *Helping Your Teen Stay Safe on Discord*, https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping-your-teen-stay-safe-on-discord (archived July 11, 2023).

[24] Discord, *Helping Your Teen Stay Safe on Discord*, https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping-your-teen-stay-safe-on-discord (archived July 11, 2023).

[25] *Id.*

[26] Hearing Before the U.S. Senate Committee on the Judiciary, Big Tech and the Online Child Exploitation Crisis, Testimony of Jason Citron, CEO and Co-Founder of Discord Inc. (Jan. 31, 2024), https://www.judiciary.senate.gov/imo/media/doc/2024-01-31_-_testimony_-_citron.pdf.

adults and teens on the service, with special attention given to predatory behaviors such as online enticement and the sexual extortion of children, commonly referred to as 'sextortion."[27]

32.     Citron also emphasized Discord's "multi-pronged approach" to child safety, including the company's "approach to product development, whereby we implement a rigorous 'safety by design' practice when developing product."[28] As Citron elaborated, "[b]ecause safety is critical to our core mission, Discord takes a 'safety by design' approach to our work."[29]

33.     Citron also highlighted Discord's "sophisticated tools" he claims are for parents to keep their children safe, as well as the company's "features designed to keep teens safe on our platform," such as Teen Safety Assist, which flags "potentially unwanted conversations to teen users in Discord" and "automatically blur[s] potentially sensitive media to teens in DMs, GMS, and in servers."[30]

C.     **In Reality, Discord Is a Digital and Real-life Nightmare for Children and Parents.**

34.     Although Discord assures parents that it has zero tolerance for content or conduct that endangers children and that its app is built on safety, the company, in fact, has created and maintains an environment in which the sexual exploitation of children is rampant and thriving. The result has been devastating, with countless children suffering irreversible harm.

**1.  Discord hosts and promotes dangerous and illegal sexual content.**

35.     Discord is overflowing with sexually explicit images and videos involving children, including anime and child sex abuse material ("CSAM") – *i.e.* child pornography.

---

[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*

Discord provides access to these materials not only to adults but also to child users, creating an ecosystem that facilitates pedophilia and exposes children to this unlawful content.

36.     The content of this material is beyond disturbing. For example, numerous Discord servers are dedicated to anime images of children being brutally assaulted and raped by male adults.

 

*Examples of images on Discord servers.*[31]

37.     Discord is also permeated with actual child pornography, or CSAM, hosting hundreds if not thousands of servers dedicated to trading and sharing CSAM. For example, in a June 2023 article, NBC News reported that "[i]n a review of publicly listed Discord servers created in the last month," it "identified 242 [servers] that appeared to market sexually explicit content of minors, using thinly veiled terms like 'CP' that refer to child sexual abuse material."[32]

38.     Predators themselves even admit that Discord is a go-to app for them for finding and sharing CSAM. In February 2024, a nonprofit called Protect Children released a report, "Tech

---

[31] National Center on Sexual Exploitation, Compilation of Proof, https://endsexualexploitation.org/wp-content/uploads/July-23_Proof-Section-Compilation_-2023DDL_Discord.pdf.
[32] Ben Goggin, *Child Predators Are Using Discord, a Popular App Among Teens, for Sextortion and Abductions*, NBC News (July 21, 2023), https://www.nbcnews.com/tech/social-media/discord-child-safety-social-platform-challenges-rcna89769.

Platforms Used by Online Child Sexual Abuse Offenders," which contained survey data from anonymous individuals searching for CSAM on the dark web. That survey revealed that Discord is one of their "top platforms" for searching for, viewing, or sharing CSAM.[33] Based on the results of this survey, the report found an "unmistakable overlap" between "the platforms most used for viewing and sharing CSAM and the platforms most popular among children and young people."[34]

39.     Through numerous well-documented and publicized cases, Discord has long been aware of the proliferation of CSAM and similar material that its app enables and facilitates, including because in some of these cases, Discord reported the material to the National Center for Missing and Exploited Children, which then reported the material to the authorities.

40.     From its beginning, Discord has been at the center of numerous criminal cases involving CSAM. According to court documents from a federal case involving a vast CSAM enterprise and conspiracy, between 2016 and 2018, ten men "utilized chatrooms on the online service 'Discord'—an application designed for online gaming communities that allows users to engage in text chat and share images and videos—to produce and exchange child pornography."[35] They pled guilty and were sentenced to long prison terms. Similarly, according to court documents in another case, between 2019 and 2020, a North Carolina man was able to use Discord to chat about and trade CSAM.[36] He pled guilty and was sentenced to 240 months in federal prison. Discord facilitates the world's most disgusting crimes, has been put on notice of the same, and yet it continues to knowingly do so.

41.     Similar incidents occurred throughout 2021 and 2022. In 2021, for example, federal authorities arrested an Idaho man after locating numerous files of CSAM that he had

---

[33] Protect Children, *Tech Platforms Used By Online Child Sexual Abuse Offenders* (Feb. 2024), https://bd9606b6-40f8-4128-b03a-9282bdcfff0f.usrfiles.com/ugd/bd9606_0d8ae7365a8f4bfc977d8e7aeb2a1e1a.pdf.
[34] *Id.*
[35] U.S. Dep't of Justice, *Ten Men Sentenced to Prison for Their Roles in a Child Exploitation Enterprise and Conspiracy* (Oct. 1, 2020), https://www.justice.gov/opa/pr/ten-men-sentenced-prison-their-roles-child-exploitation-enterprise-and-conspiracy.
[36] U.S. Dep't of Justice, *Man in Possession of Child Sexual Abuse Material Is Sentence to 20 Years in Prison* (Feb. 17, 2023), https://www.justice.gov/usao-wdnc/pr/man-possession-child-sexual-abuse-material-sentenced-20-years-prison.

uploaded to his Discord account.[37] And in 2022, a Louisiana man pled guilty to possessing CSAM, admitting that "he created a Discord account," that "other Discord users would share CSAM on the website," and that he would "upload the saved CSAM from his phone to other Discord users."[38] Several months later, a New York man was arrested for uploading and distributing CSAM using Discord.[39] And two months later, a University of Florida quarterback was arrested and accused of sharing CSAM on Discord.[40] When the man spoke with the police after his arrest, he admitted that he had been on Discord servers that "discuss, solicit, and distribute child sexual abuse material."[41] No safety features prevented it and Discord has access to it and knows about it.

42.     2023 was no different. For example, at the start of the year, a New York man was arrested and charged with creating and sharing CSAM through Discord after a police investigation revealed that he had allegedly instructed a 13-year-old boy to provide images and videos of himself committing sex acts on a 4-year-old girl.[42] The next month, a Vancouver man was found guilty of numerous charges, including distributing and possessing CSAM, based largely on

[37] U.S. Dep't of Justice, *Nampa Man Sentenced to 6 Years in Federal Prison Possessing Child Pornography* (Dec. 12, 2023), https://www.justice.gov/usao-id/pr/nampa-man-sentenced-6-years-federal-prison-possessing-child-pornography.
[38] U.S. Dep't of Justice, *Registered Sex Offender Pleads Guilty to Possession of Child Sex Abuse Material* (May 10, 2022), https://www.justice.gov/usao-edla/pr/registered-sex-offender-pleads-guilty-possession-child-sexual-abuse-material.
[39] News 12 Staff, *Prosecutor: Phillipsburg Man Distributed Child Pornography Through Discord*, News12 The Bronx (Sept. 28, 2022), https://bronx.news12.com/prosecutor-phillipsburg-man-distributed-child-pornography-through-discord.
[40] Tim Stelloh & Antonio Planas, *University of Florida Quarterback Arrested and Accused of Sharing Child Sexual Abuse Images on Discord*, NBC News (Nov. 30, 2022), https://www.nbcnews.com/news/us-news/university-florida-quarterback-arrested-allegedly-sharing-child-sexual-rcna59513.
[41] *Id.*
[42] *West New York Man Charged with Child Abuse Material*, Hudson Reporter (Jan. 19, 2023), https://hudsonreporter.com/news/west-new-york/west-new-york-man-charged-with-child-abuse-material/.

communications and videos the man shared on Discord showing the sexual assault of an infant by an adult man.[43]

43.     These incidents continued throughout 2024. In February, for example, a New Jersey man was arrested after an investigation revealed that he had uploaded to Discord a file depicting the sexual exploitation or abuse of minors.[44] At the time, the man was employed at a school serving students as young as five years old. A few months later, an Oklahoma man was arrested and charged with possessing and distributing CSAM after he shared CSAM on Discord.[45] Later that year, a former Indiana firefighter was arrested after police learned he was trading CSAM on Discord.[46]

### 2.     Discord provides a hunting ground for child-sex predators.

44.     Discord has also created a haven for predators seeking to groom, traffic, and sexually abuse vulnerable minors by providing predators with endless opportunities for unmitigated interactions with children through public servers, direct messages, and video/voice chat channels. Discord allows adult users to hide their true identity, change their voice, and manipulate children. Discord allows adults to search for and target children.

45.     Discord hosts numerous servers that openly operate as spaces where children are sexually exploited by predators. In its June 2023 article on Discord, NBC News reported that it found numerous servers involving adults pretending to be teens to entice children into sharing nude images—something that Discord knew and should have known about. NBC News described several servers that explicitly solicited minors to join "not safe for work" communities, including

---

[43] Fox 12 Staff, *Washougal Man Gets 108 Years for Child Rape, Creating Child Sex Assault Materials*, Fox 12 Oregon (Mar. 25, 2023), https://www.kptv.com/2023/03/25/washougal-man-gets-108-years-child-rape-creating-child-sex-assault-materials/.
[44] Morris County Prosecutor's Office, *Jefferson Resident Arrested for Child Pornography* (Feb. 16, 2024), https://www.morriscountynj.gov/Departments/Prosecutor/Prosecutor-Press-Releases/Jefferson-Resident-Arrested-for-Child-Pornography.
[45] *Wagoner Man Arrested, Accused of Distributing Child Pornography Over Discord*, Fox 23 News (June 25, 2024), https://www.fox23.com/news/wagoner-man-arrested-accused-of-distributing-child-pornography-over-discord/article_520191ec-333c-11ef-87b7-3bffc2affd71.html.
[46] Joe Schroeder, *Docs: Ex-Indiana Firefighter Traded Porn on Discord, Dated a 17-year-old*, Fox 59 (Sept. 4, 2024), https://fox59.com/news/indycrime/docs-ex-indiana-firefighter-traded-child-porn-on-discord-dated-a-17-year-old/.

one server that promoted itself on the public server database as "a community for people between the ages of 13-17. We trade nudes, we do events. Join us for the best Teen-NSFW experience <3."[47] Another server claimed to accept "little girls 5-17 only" and had chat channels with titles such as "begging-to-have-sex-chat" and "sexting-chat-with-the-server-owner."[48] Still another server directly solicited nude images from minors to gain access: "YOU NEED TO SEND A VERIFICATION PHOTO TO THE OWNER. IT HAS TO BE NUDE."[49]   The terms used were not prohibited by Discord.  The targeting of children was not prohibited.  The explicit solicitation of children and nudes was not prohibited.  Discord allows the direct and explicit solicitation of sex material from minors.

46.     Other Discord servers are only slightly less obvious. For example, a server called "Family Hideout" centered on an adult man who called himself "Dad" and built a "family" of children online.[50] In this server, which was labeled "Friendly," "Family," and "All-Ages," the man developed relationships with children and encouraged them to take and share nude images.



---

[47] Goggin, *supra* note 28.
[48] *Id.*
[49] *Id.*
[50] National Center on Sexual Exploitation, *The Dirty Dozen List '24: Discord*, https://endsexualexploitation.org/discord/.

*Family Hideout server in March 2023.*

47.     Other servers are more discreet yet are still widely known as places where children are groomed. For instance, a server called "FurWaterSportsAndYiff" was described as "Full of minors, groom hub" by one disgusted reviewer of the server. According to the reviewer, this server was filled with minors and adults and was "[p]retty much pedophilia at its best."[51]



*This server existed on Discord from 2022 through at least April 2023.*

48.     Through numerous well-documented and publicized cases, Discord has long known that its app enables and facilitates the grooming, trafficking, and sexual abuse of minors. For example, in its June 2023 article, NBC News reviewed publicly available information since Discord was founded and identified 35 cases in the previous six years in which adults were prosecuted on charges of kidnapping, grooming, or sexual assault that involved communications on Discord.[52] Because these cases were only those that were reported, investigated, and prosecuted during that time, "What we see is only the tip of the iceberg," explained a child safety advocate.

---

[51] *Id.*
[52] Goggin, *supra* note 28.

49.     Over the years, countless criminal cases have exposed the critical role that Discord plays in enabling and facilitating grooming and other predatory conduct. In 2022, for instance, an Indiana man pled guilty to sexual exploitation of a minor and possession of CSAM after the FBI discovered that he had engaged in sexually explicit conversations with an 11-year-old girl on Discord and coerced the girl into sending sexually explicit images of herself.[53] The girl later told police that she communicated with the man via chats, video calls, and voice calls on Discord. Later that year, an Oregan man was federally charged with child exploitation crimes following an investigation that found he had "pretended to be an Oregon teenager to convince the child to engage in sexually explicit acts during a video chat on Discord."[54]

50.     Similar cases were brought throughout 2023 and 2024. In March 2023, for example, a man was charged after he allegedly had a sexually explicit conversation with a 14-year-old girl and shared CSAM with her—all on Discord.[55] At the time, the man was a middle-school science teacher and had engaged in this conduct at the school where he was employed. And in 2024, a South Carolina man was sentenced to 20 years in federal prison after he pled guilty to numerous crimes he committed against children on Discord, including coercing minor girls into performing livestream sexual acts for him in a Discord call that he recorded.[56] The man also made repeated threats to the girls and their families, and one of the girls attempted suicide because of this abuse.

51.     Discord has also been at the center of numerous cases involving the kidnapping and sexual assault of minors. For example, in 2021, a Virgina man was arrested and charged with

---

[53] Phyllis Cha, *Marion County Corrections Employee Fired, Arrested Over Sexually Explicit Images to Girl*, IndyStar (Sept. 7, 2022), https://www.indystar.com/story/news/crime/2022/09/07/corrections-officer-marion-county-employee-sexually-explicit-messages-to-child/65781240007/.
[54] U.S. Dep't of Justice, *Oregon Man Charged with Sexually Exploiting Minor on Discord, Additional Victims Sought* (Oct. 3, 2022), https://www.justice.gov/usao-or/pr/oregon-man-charged-sexually-exploiting-minor-discord-additional-victims-sought.
[55] *NJ Teacher Charged After "Sexually Explicit Conversation" with Teen*, New Jersey 101.5 (Mar. 3, 2023), https://nj1015.com/nj-teacher-charged-after-sexually-explicit-conversation-with-teen/.
[56] Alan Hovorka, *Lowcountry US Army Member Who Groomed Girls, Recorded Child Porn on Discord Sentenced to Prison*, Post & Courier (Aug. 3, 2024), https://www.postandcourier.com/news/evan-bucci-child-porn-discord-grooming/article_09cf85ce-50dc-11ef-84b2-7b7358023542.html.

sexually exploiting and kidnapping a 12-year-old girl from her home in California.[57] According to court documents, the man met and groomed the girl on Discord, flew to California and picked her up at her house at 2:30 a.m., and was arrested at the Denver airport during a layover.

52.    Similarly, in February 2023, a Michigan man was arrested and charged with kidnapping a 14-year-old Washington girl whom he had met and groomed on Discord.[58] The next month, a North Carolina man was arrested and charged with rape, child abduction, and human trafficking after police rescued a 13-year-old from a locked shed behind his house.[59] According to the girl's mother, the man had been communicating with her daughter for months on Discord before he abducted her from her home in Dallas.

53.    2024 brought more of the same. In February, a Texas man was charged with human trafficking and sexual assault of a 16-year-old girl whom he met and communicated with on Discord.[60] The girl told police that the man picked her up in Kansas and brought her to his apartment in Texas, where they had sex multiple times. A few months later, a North Carolina man was charged with kidnapping and raping a 12-year-old girl he had met on Discord.[61] Around the same time, a Pennsylvania man was arrested and charged with multiple offenses, including rape of a child and indecent assault of a person less than 13 years of age.[62] The police investigation

---

[57] Dan Morse, *With Children Stuck at Home During Coronavirus Shutdowns, Online Sexual Predators Can Swoop In*, Wash. Post (Feb. 12, 2023), https://www.washingtonpost.com/local/public-safety/coronavirus-lockdown-child-exploitation/2021/02/04/90add6a6-462a-11eb-a277-49a6d1f9dff1_story.html.

[58] Ruth Bashinsky, *Washington State Girl, 14, Who Went Missing with "Man She met on Discord" Near Notorious Sex Trafficking Corridor FOUND: Michigan Man Arrested over Kidnapping*, Daily Mail (Feb. 1, 2024), https://www.dailymail.co.uk/news/article-13034633/washington-state-girl-missing-discord-sex-trafficking-michigan.html.

[59] Peter Charalambous & Alexandra Faul, *Missing 13-year-old Rescued from Locked North Carolina Shed*, ABC News (Mar. 14, 2023, https://abcnews.go.com/US/missing-13-year-rescued-locked-north-carolina-shed/story?id=97830147.

[60] Brittany Eubank, *Man and His Mother Charged After Missing Kansas Teen Found Safe in Central Texas*, KVUEabc (Feb. 8, 2024), https://www.kvue.com/article/news/crime/austin-human-trafficking-sexual-assault-missing-kansas-teen/269-361c25e3-12a8-4ec4-8779-0f962c12e8d1.

[61] *"Under 13 Is Under 13": Judge Responds to Attorney's Claim That Man Charged with Kidnapping & Rape Believed 12-year-old Girl Was College Student*, WRAL News (Apr. 16, 2024), https://www.wral.com/story/under-13-is-under-13-judge-responds-to-attorney-s-claims-that-man-charged-with-kidnapping-rape-believed-12-year-old-girl-was-col/21381250/.

[62] Keith Heffintrayer, *Four Men Arrested Following Investigation into Sexual Abuse of 12-year-old Boy in Upper Gwynedd*, NorthPennNow (Apr. 15, 2024), https://northpennnow.com/news/2024/apr/15/four-men-arrested-following-investigation-into-sexual-abuse-of-12-year-old-boy-in-upper-gwynedd-police-say/.

revealed that the man was communicating with the 12-year-old boy on Discord, which included sexual conversations and making plans to meet. Law enforcement has repeatedly put Discord on notice through investigations that its app is being used for the explicit purpose of exploiting children.  In response, Discord has made false public claims to try to save face but has not taken necessary actions to stop it.

54.     Despite Discord's repeated assurances to parents that it has a "zero tolerance" policy for the criminal acts described above and that its product is built on safety, the rampant sexual exploitation of children on Discord has gotten only worse over the years—not better. John Shehan, the Senior Vice President of the National Center for Missing and Exploited Children, emphasized that his organization has seen "explosive growth" in CSAM and exploitation on Discord.[63] "There is a child exploitation issue on the platform. That's undeniable," he stated.

55.     Indeed, for four consecutive years, the National Center on Sexual Exploitation ("NCSE") has named Discord to its "Dirty Dozen". As NCSE put it, "Discord enables exploiters to easily contact and groom children," and predators "take advantage of Discord's dangerous designs to entice children into sending sexually explicit images of themselves.[64] After sent, the images can be used as blackmail to further the exploitation and promote further harm.

56.     Discord itself confirms that this criminal conduct that it enables has only become more pervasive. Discord, for example, revealed that in the fourth quarter of 2023, it received 416,036 reports from users regarding "Child Safety" issues, which includes CSAM.[65] By the next quarter, that number had grown to 1,035,166—a roughly 150% increase.[66]

---

[63] Goggin, *supra* note 28.
[64] National Center on Sexual Exploitation, *supra* note 46.
[65] Discord, *Discord Transparency Report: January – March 2023*, https://cdn.prod.website-files.com/625fe439fb70a9d901e138ab/64b16dade9ba30617e30a40a_Q1%2023%20%7C%20Discord%20Transparency%20Report_%20JANUARY%20-%20MARCH%202023.pdf.
[66] Discord, *Discord Transparency Report: January – June 2024*, https://cdn.prod.website-files.com/625fe439fb70a9d901e138ab/67056a054d453d30491c1ac9_Discord%20Jan_Jun%202024%20Transparency%20Report.pdf.

### D.     Discord Knowingly Causes and Facilitates the Sexual Exploitation of Children.

57.     Discord is overrun with harmful content and predators because the company prioritizes growth, revenue, and eventual profits over child safety. For years, Discord has knowingly prioritized these numbers over the safety of children through the actions it has taken and decisions it has made to increase and monetize users regardless of the consequences.

### 1.  Discord prioritizes growth over the safety of children.

58.     Although Discord began as a communications app for gamers, its co-founders Eric Citron and Stanislav Vishnevskiy soon realized that Discord appealed to a much broader audience and sought to expand its user base. "We saw an opportunity to make communications easier for everyone, not just gamers," Citron explained.[67] So the company changed its motto from "Chat for gamers" to "A new way to chat with your communities and friends" and became hyper-focused on transforming into a universal communication product.[68]

59.     Discord has since grown exponentially. In 2019, the company had 56 million monthly active users.[69] But with Discord's shift away from gaming in 2020, combined with its pandemic-driven explosion in popularity among young users, the company grew its monthly active users to 150 million by 2022.[70] Today, Discord boasts over 200 million monthly active users.[71]

60.     As Discord has grown, private investors have poured money into the company. In June 2020, Discord raised $100 million at a $3.4 billion dollar valuation.[72] Just five months later,

---

[67] Nathan Latka, *Discord's $879M Revenue: 25 Moves to $25B Valuation*, LATKA-B2B Saas Blog (Jan. 15, 2025), https://blog.getlatka.com/discord-revenue/.
[68] Kellen Browning, *How Discord, Born from an Obscure Game, Became a Social Hub for Young People*, N.Y. Times (Dec. 29, 2021), https://www.nytimes.com/2021/12/29/business/discord-server-social-media.html.
[69] HelpLama, *Discord Revenue and Usage Statistics 2025*, https://helplama.com/discord-statistics/.
[70] *Id.*
[71] Podcast Transcript, *Discord CEO Jason Citron Makes the Case for a Smaller, More Private Internet*, The Verge (Apr. 22, 2024), https://www.theverge.com/24134914/discord-ceo-gaming-chat-teens-safety-moderation-decoder-interview.
[72] Equitybee, *Discord Funding History*, https://equitybee.com/companies/company?company=discord (last visited Feb. 11, 2025).

the company raised another $100 million at more than double the valuation ($6.90 billion).[73] In early 2021, Discord rebuffed an acquisition offer from Microsoft of at least $10 billion.[74] Later that year, it raised another $500 million at a staggering valuation of $14.5 billion.[75] While Discord has remained privately held so far, the company is expected to go public this year.[76]

61.    A primary reason for investors' interest in Discord is its user growth, putting enormous pressure on the company to prioritize growing its users above all else. Growing its users is critical to the company's revenue and future profitability. Discord generates most of its revenue from its subscription service called Nitro, which provides users with benefits such as custom emojis, unlimited "super reactions," and HD video streaming. As the company expanded its user base, its revenue skyrocketed from $150 million in 2020 to $600 million in 2024.[77] And while for years Discord shunned advertising on its app, the company recently started selling advertisements to boost revenue by capitalizing on its massive and growing user base.[78]

62.    Discord's growth strategy has focused on a user-centric approach that prioritizes user preferences over child safety. As Discord CEO and co-founder Eric Citron put it, "We focus on what our users love, and that drives everything we do."[79] In practice, that has resulted in Discord elevating the privacy of its users over protecting children in order to attract as many users to its app as possible. For example, Discord continues to allow people to chat using fake names and does not require individuals to enter their real names when registering for an account, ensuring that predators will continue to flock to Discord because they can seemingly remain anonymous.

---

[73] *Id.*
[74] Sarah E. Needleman, *Discord Ends Deal Talks with Microsoft*, Wall. St. J. (Apr. 20, 2021), https://www.wsj.com/articles/discord-ends-deal-talks-with-microsoft-11618938806.
[75] *Id.*
[76] Chris Morris, *These Are the Most Anticipated IPOs to Watch in 2025*, FastCompany (Dec. 30, 2024), https://www.fastcompany.com/91243719/most-anticipated-ipos-to-watch-in-2025.
[77] Salvatore Rodriguez & Sarah E. Needleman, *Discord to Start Showing Ads for Gamers to Boost Revenue*, Wall St. J. (Mar. 30, 2024), https://www.wsj.com/tech/discord-to-start-showing-ads-for-gamers-to-boost-revenue-bf5848b9.
[78] Equitybee, *Discord Funding History*, https://equitybee.com/companies/company?company=discord (last visited Feb. 11, 2025).
[79] Nathan Latka, *Discord's $879M Revenue: 25 Moves to $25B Valuation*, LATKA-B2B Saas Blog (Jan. 15, 2025), https://blog.getlatka.com/discord-revenue/.

63.     Discord even prioritizes user privacy over child safety with a feature it recently added to supposedly allow parents to monitor their children's Discord use. In 2023, Discord created its "Family Center for Parents and Guardians"—a "completely opt-in feature" that is "not mandatory for teens."[80] While this feature permits parents to monitor some of their children's activity on Discord, it prohibits parents from accessing the most important information on their accounts—the contents of their messages. As Discord tells children, "We value your privacy which is why connected accounts will not have access to the contents of your messages."[81] Discord also assures children that, with Family Center, "you have control over whether or not you use this feature, how long you want to use it for, and who you connect your account to."[82] By putting children in charge of this parental feature, Discord seeks to preserve growth of this key demographic. Discord's claimed safety features are anything but safe.  Creating a façade of safety only increases the danger because parents unwittingly rely on the false sense of security to their children's detriment and exploitation.

64.     In pursuit of growth, Discord has also chosen not to implement easy measures that would protect children but stunt user growth, such as age verification to ensure that children under 13 cannot create accounts and that adults cannot misrepresent their age to children. Further, age verifications can and should be used to prevent adults from privately engaging with children.

65.     Discord has also fought attempts to be held publicly accountable for the sexual exploitation of children that its app enables. In November 2023, Discord's CEO and co-founder Eric Citron refused to accept service of a subpoena to testify before the U.S. Senate as part of its hearing on "Big Tech and the Online Child Sexual Exploitation Crisis."[83] Citron appeared at the

---

[80] Discord, *What Is Family Center?*, https://support.discord.com/hc/en-us/articles/14155039712407-What-is-Family-Center#:~:text=We%20value%20your%20privacy%20which,names%2C%20server%20icons%2C%20and%20member (last visited Feb. 11, 2025).
[81] *Id.*
[82] *Id.*
[83] *Senate Panel Forced to Use U.S. Marshals to Subpoena CEOs of X and Discord to Testify on Protecting Kids Online*, CBS News (Nov. 21, 2023), https://www.cbsnews.com/news/senate-panel-us-marshals-subpoenas-ceos-x-discord/.

24

hearing only after the Senate was forced to enlist the U.S. Marshals Service to personally subpoena him—a situation the Senate called "a remarkable departure from typical practice."[84]

66.     The National Center for Missing and Exploited Children, which internet companies are by law required to report instances of child sex abuse to, also reported issues working with Discord and had to rescind an invitation to become part of its Cyber tipline Roundtable when the company failed to "identify a senior child safety representative to attend."[85] "It was really questionable, their commitment to what they're doing on the child exploitation front," stated John Shehan, the Senior Vice President of the National Center for Missing and Exploited Children.[86]

### 2. Discord facilitates child sexual exploitation through the design of its app, inadequate safety features, and refusal to invest in basic safety protections.

67.     Discord's pursuit of growth over child safety is reflected in numerous actions it took and decisions it made related to the design and safety of its app. Had Discord acted differently, the harm suffered by countless children would not have occurred.

68.     Discord designed its app so that anyone can easily communicate with children, creating a virtual world where predators can freely target and sexually exploit children. Despite its repeated assurances to parents that its app "defaults" to safety for child accounts, Discord, in fact, designed its app to default to settings that facilitate the sexual exploitation of children.

69.     Discord, for example, defaults to settings that allow predators to send direct messages to children. Predators often identify and target children by joining servers that are populated with kids. By default, Discord allows any two people who share a server to direct message each other, providing predators with an easy means of contacting and communicating with children. Predators also often initiate contact with children by adding a child as a "friend" on Discord so they can direct message them. By default, Discord permits children to receive friend

---

[84] *Id.*
[85] Goggin, *supra* note 28.
[86] *Id.*

25

requests from "Everyone," meaning children can receive and accept friend requests from individuals whom they do not know and with whom they have no connection.

70.    For years, Discord also defaulted to settings that enabled predators to send children sexually explicit images via direct messages. In 2017, for example, Discord introduced "Safe Direct Messaging." This feature contained three options, including "Keep me safe," which supposedly would automatically scan and delete messages that a child received containing explicit content.

The process is pretty simple. Safe Direct Messaging has three settings:

The differences are pretty simple:

Keep me safe: The safest option. This will have Discord scan any image sent in all DMs, regardless of whether you've added the user on your friend list, or the user is DMing you just by sharing a mutual server.

My friends are nice: The medium-est option! This will let Discord know to scan any images sent in DMs from users that aren't on your friends list, but also to trust your previously-added friends and not worry about any images they send.

Do not scan: The self-confident option. Enabling this option will completely disable Discord's image scanning process, and leave you for a walk on the wild side for any and all DMs you receive. Careful, it's a jungle out there!

*Discord's description of the categories of its Safe Direct Messaging feature.*[87]

71.    Consistent with Discord's "default to safety" promise, the company long represented that the "Keep me safe" option was on by default. In fact, though, Discord defaulted not to this most restrictive setting but to the lower setting of "My friends are nice," which meant that Discord would not scan any images from a child's "friend"—which could be anyone.

---

[87] Discord, *Discord Safety: Safe Messaging!*,
https://web.archive.org/web/20210203000438/https://support.discord.com/hc/en-us/articles/115000068672-Discord-Safety-Safe-Messaging- (archived Feb. 3, 2021).

**If you do not want to see age-restricted content on Discord**

If you do not want to be exposed to age-restricted content on Discord, or if you are under 18 years old, we recommend **turning on the explicit media content** filter in your privacy settings. In your *User Settings*, select *Privacy & Safety*, and choose '*Keep me safe*' under *Safe Direct Messaging*. This setting is on by default and will ensure that images and videos in all direct messages are scanned by Discord and age-restricted content is blocked.

*Discord's "Age-Restricted Content on Discord" webpage in 2022.*[88]

72.     Discord later changed the labels of this feature from "Keep me safe" to "Filter all direct messages" and from "My friends are nice" to "Filter direct messages from non-friends."[89] But it continued to default to the less restrictive setting: "By default, these filters are set to 'Filter direct messages from non-friends.' Choose 'Filter all direct messages' if you want all direct messages you receive to be filtered, or select 'Do not filter direct messages' to turn these filters off."[90]

73.     Although parents can change Discord's permissive default settings to more restrictive ones, that option is meaningless because Discord enables children to modify these safety settings without parental approval. So a parent might modify the default settings so that their child cannot exchange direct messages with other server members or cannot receive friend requests from "Everyone," only to have their child simply change those settings to allow these unfettered interactions. As Discord puts it, "[o]ur product architecture provides each user with fundamental control over their experience on Discord including who they communicate with, what content they see, and what communities they join or create."[91] By doing so, Discord strips parents of basic protective options that would prevent adult strangers from targeting and exploiting their children. As one parent explained in calling Discord an "EXTREMELY

---

[88] Discord, *Age-Restricted Content on Discord*,
https://web.archive.org/web/20220406085122mp_/https://discord.com/safety/360043653552-Age-Restricted-Content-on-Discord (archived Apr. 6, 2022) (emphasis added).
[89] Discord, *Helping Your Teen Stay Safe on Discord*,
https://web.archive.org/web/20230711200552/https://discord.com/safety/360044153831-helping-your-teen-stay-safe-on-discord (archived July 11, 2023).
[90] *Id.*
[91] Discord, *Discord Parent Hub*, https://discord.com/safety-parents (last visited Feb. 11, 2025).

dangerous app," Discord does not provide "any way for parents to set settings that can't simply be undone by kids."[92]

74.     Discord also refused to implement other simple measures that would have protected children using its product. For example, despite having the ability to do so, Discord does not require users to verify their age and identify when creating an account. Doing so would have prevented predators from creating fake profiles and pretending to be children, which is their preferred approach in targeting children and convincing them to share sexually explicit images.

75.     Age and identity verification would also have prevented individuals under 13 from creating accounts on Discord. In many of the criminal cases involving the sexual exploitation of children on Discord, the children were under the age of 13. By requiring ID verification during the account sign-up process—a practice that other online product employ—Discord could have easily prevented these children from even using its app. But it chose not to, despite knowing for years that children under 13 operate freely on its environment and are targeted by predators.

76.     Despite these glaring failures, Discord constantly promotes its technology-focused "safety solutions" including its "AI-powered moderation systems."[93] But this technology has proven grossly inadequate and insufficient to protect children from sexual exploitation. For instance, Discord's Teen Safety Assist feature, which it introduced in October 2023, is supposed to "automatically blur media that may be sensitive in direct messages and group direct messages with friends, as well as in servers," and send "safety alerts" to teen users when they receive a direct message from a user for the first time."[94] Yet this feature is "utterly defective," according to the National Center on Child Exploitation.[95] As part of its annual investigation into Discord,

---

[92] National Center on Sexual Exploitation, *supra* note 46.
[93] Discord, *Discord's Commitment to Teen and Child Safety* (July 11, 2023),
https://discord.com/safety/commitment-to-teen-child-safety.
[94] Savannah Badalich, *Building a Safer Place for Teens to Hang Out*, Discord (Oct. 24, 2023),
https://discord.com/safety/safer-place-for-teens.
[95] National Center on Sexual Exploitation, *supra* note 46.

"NCOSE researchers were able to send sexually explicit content from an adult account to an unconnected 13-year-old account, and no warning or resources were displayed."[96]

77.     Discord is also famously slow and ineffective at responding to child-safety issues. One mother, for example, told CNN that Discord essentially refused to help her after she reported that a man had communicated with her 10-year-old daughter and sent her links to pornography.[97] Following the mother's report, Discord sent her an automated message asking for "the message links to the reported content for the team to review and take appropriate action."[98] After the mother sent the requested links, Discord never responded. "There was no help at all," she said.[99]

78.     Child protection groups have also repeatedly highlighted flaws in Discord's approach to child safety. For example, Denton Howard, executive director of Inhope, an organization of missing and exploited children hotlines from around the world, has flagged numerous problems with Discord's approach to child safety, including "slow response times to reports, communications issues when [child protection] hotlines tried to reach out, hotlines receiving account warnings when they try to report CSAM, the continued hosting of communities that trade and create CSAM, and evidence disappearing before hearing back from Discord."[100]

## V.     DEFENDANTS CAUSED EGREGIOUS AND PERMANENT HARM TO PLAINTIFF

79.     Plaintiff is a 19-year-old woman who, as a minor, was manipulated and groomed through Discord's dangerous app by a convicted sex offender who exploited her vulnerabilities and sexually abused her. He sent Plaintiff graphic messages describing sexual acts he intended to do to her, sent her sexually explicit images of himself, coerced her into sending graphic, sexually explicit images and videos of herself, and made multiple attempts to meet Plaintiff in person.

---

[96] Id.
[97] Samantha Murphy Kelly, The Dark Side of Discord for Teens, CNN Business (Mar. 22, 2022), https://www.cnn.com/2022/03/22/tech/discord-teens/index.html.
[98] Id.
[99] Id.
[100] Goggin, supra note 28.

Plaintiff has suffered devastating and life-altering psychological trauma. Her life will never be the same.

80. As a child, Plaintiff was diagnosed with selective mutism, which significantly impaired her ability to communicate verbally in social settings. Plaintiff was sixteen (16) years old when she first started using Discord. Plaintiff's mother trusted that Discord was a safe place for Plaintiff to communicate with her friends because Discord portrayed its app as being kid friendly, including by touting its "Student Hubs"—a feature aimed at drawing children to the app. As discussed above, Discord spent considerable time and money publicly falsely touting the safety and security of the app. This created the public perception that Discord had created a safe environment for kids. Unbeknownst to Plaintiff's mother at the time, this was nothing more than a false façade of safety.

81. By this time, Discord had long been aware—from countless police reports and incidents reported in the media—that its app was widely used by predators to target, groom, and sexually assault children. Discord specifically knew from numerous tragic events that occurred in the real world that predators target and manipulate children on its app by lying about their age. Yet rather than warn parents or take other measures to protect children from harm, Discord continued with its deceptive campaign to portray the app as safe for children and to conceal information that it knew about the pervasive predatory conduct that its app enabled and facilitated. Had she known the truth about Discord and its business practices, Plaintiff's mother would never have permitted Plaintiff to use the app.

82. In 2023, when Plaintiff was 17 years old, she was targeted by a predator who posed as a fellow young woman and exploited Plaintiff's age and vulnerability to build a false emotional connection with her by promising friendship.

83. The predator cultivated a relationship with Plaintiff through Discord, building trust and establishing a false friendship that would facilitate future manipulation and coercion. Over the next few days, the predator sent Plaintiff graphic messages on Discord describing sexual acts

he intended to do to her. He sent sexually explicit images of himself on Discord and convinced Plaintiff to do the same.

84.     The predator ultimately convinced Plaintiff to reveal her home address. Upon receipt of this information, the predator arranged for an adult sex toy to be sent to Plaintiff's home, and he coerced Plaintiff into filming herself on Discord using it. He repeatedly pressured Plaintiff to continue sending explicit images and videos of herself on Discord and made multiple attempts to meet up with Plaintiff in person.

85.     The predator manipulated Plaintiff into continuing to interact with him by sending her money via CashApp, which allowed him to further manipulate Plaintiff's emotions and foster Plaintiff's continued dependency on him.

86.     In reality, the predator was a registered sex offender who had previously served two years in prison for offenses involving minors. Despite this, the perpetrator maintained an active account on Discord, which facilitated his ongoing predatory behavior for years

87.     Plaintiff has suffered profound harm from the grooming, manipulation, and sexual exploitation that she experienced on Discord's app. Plaintiff has suffered significant emotional and psychological injuries, including anxiety, depression, post-traumatic stress, immense humiliation, shame, and a loss of trust and safety. She has engaged in self-harming behaviors, and continues to endure the effects of this abuse, which have severely impacted her mental health, her educational pursuits, and overall well-being.

88.     Discord is directly responsible for the immense harm that Plaintiff has suffered. Had Plaintiff's mother known the truth about Discord's app, she never would have permitted Plaintiff to use the app. Had Discord implemented even the most basic system of screening or age and identity verification, as well as other common sense safety measures, Plaintiff never would have interacted with this predator and never would have suffered the harm that she did. Plaintiff's life has been devastated as a direct result of Discord's conduct.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### FRAUDULENT CONCEALMENT AND MISREPRESENTATION
### (By Plaintiff Against Defendant)

89.    Plaintiff incorporates each and every factual allegation set forth above.

90.    As set forth in more detail above, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, Defendant engaged in a widespread public campaign to tout the safety of its platform in the media, and in the materials provided to potential users of the app, as described above.

91.    Defendant made numerous false representations about the safety of its app, as described above, which were specific and widespread. Plaintiff's mother and the public at large relied on Defendant's false representations in deciding to allow children to play on the app.

92.    Defendant was under a duty to tell the public the truth and to disclose the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, Defendant engaged in a widespread public campaign to tout the safety of its app in the media, and in the materials provided to potential users of the app, as described above.

93.    Defendant breached its duty to the public, users, and their parents by concealing and failing to disclose the serious safety risks presented by its app. Even though Defendant knew of those risks based on its internal reviews, external studies known to Defendant, and parent and police reports made to Defendant, Defendant intentionally concealed those risks to not lose users and revenue, and to induce parents to allow their children to use its app. Such risks were known only to Defendant, and the public, users, and their parents, including Plaintiff's mother, could not have discovered such serious safety risks.

94.    The public, users, and their parents, including Plaintiff's mother, did not know of the serious safety risks posed by the design of Defendant's app, which were known by Defendant.

95.    By intentionally concealing and failing to disclose defects inherent in the design of its app, Defendant knowingly and recklessly misled the public, users, and their parents, including Plaintiff's mother, into believing that its app was safe for children to use.

32

96.     Defendant knew that its concealments, omissions, and misrepresentations were material. A reasonable person, including Plaintiff's mother, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of Defendant's app, to be important when deciding whether to allow children to use it.

97.     Defendant's concealments, omissions, and misrepresentations were made with knowledge of their falsity and/or with utter disregard and recklessness as to whether they were true or false because Defendant made these concealments, omissions, and misrepresentations while knowing their platform was dangerous for children and had a significant risk of exposing children to abusers.

98.     Defendant intended to mislead the public, users, and their parents, including Plaintiff's mother, by making misrepresentations and concealing the defects in the design of its app, which made the app unsafe, and intended that these individuals would rely upon these concealments, omissions, and misrepresentations.

99.     As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Plaintiff's mother was not aware and could not have been aware of the facts that Defendant concealed, and therefore justifiably and reasonably relied on that Defendant's concealments, omissions, and misrepresentations that Defendant's app was safe for children to use

100.    If the serious safety risks presented by the design of Defendant's app had been disclosed, the public, users, and their parents, including Plaintiff's mother, reasonably would have acted differently and/or would have not permitted children to use the app.

101.    As a direct and proximate result of Defendant's concealment of material information and misrepresentations, Plaintiff sustained serious injuries and harm.

102.    Defendant's concealment of material information and misrepresentations were a substantial factor in causing harm to Plaintiff.

103.    Defendant's conduct, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an

entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

104.    Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**SECOND CAUSE OF ACTION**
**NEGLIGENCE – GENERAL**
**(By Plaintiff Against Defendant)**

105.    Plaintiff incorporates each and every factual allegation set forth above.

106.    At all relevant times, Defendant developed, set up, managed, maintained, operated, marketed, advertised, promoted, supervised, controlled, and benefited from its app used by Plaintiff.

107.    Defendant owed Plaintiff a duty to exercise reasonable care in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app and not to create an unreasonable risk of harm from and in the use of its app (including an unreasonable risk of grooming, sexual abuse, and sexual exploitation, and other associated physical or mental injuries); to protect Plaintiff from unreasonable risk of injury from and in the use of its app; and not to invite, encourage, or facilitate youth, such as Plaintiff, to foreseeably engage in dangerous or risky behavior through, on, or as a reasonably foreseeable result of using its app. These duties govern Defendant's own specific actions and are based on direct actions Defendant took in developing its app and features.

108.    In addition, Defendant owed a special relationship duty to Plaintiff to protect her against harm caused by its app and employees or by other users. This special relationship duty is based on the following:

        a.    As a business, Defendant owes a duty to protect customers against reasonably foreseeable criminal acts of third parties and other dangers known to Defendant on its app;

34

b.  Plaintiff, as a minor was vulnerable and dependent on Defendant for a safe environment on its app, and Defendant has the superior ability and the control to provide that safety with respect to activities that it sponsors or controls;

c.  Plaintiff relied upon Defendant for protection against third-party misuse or misconduct;

d.  The special relationship Plaintiff had with Defendant substantially benefits Defendant through profits and growth in users and user activity. Defendant could not successfully operate without the growth in users and user activity generated by children;

e.  Defendant was far more to Plaintiff than a business. Defendant provided Plaintiff with opportunities for social interaction and a discrete community of other users. Plaintiff was dependent on Defendant to provide structure, guidance, and a safe environment;

f.  Defendant has superior control over its app environment and the ability to protect its users. Defendant imposes a variety of rules and restrictions to maintain a safe and orderly environment. Defendant employs internal staff to enforce these rules and restrictions and can monitor and discipline users when necessary. Defendant has the power to influence Plaintiff's values, consciousness, relationships, and behaviors; and

g.  Defendant has voluntarily undertaken a responsibility to keep children safe on its app. As alleged above, Defendant has publicly stated that they take steps to keep children safe on its app and therefore have undertaken a duty to act reasonably in taking such steps.

109.  Plaintiff was a foreseeable user of Defendant's app.

110.  Defendant knew that minors such as Plaintiff would use its app.

35

111.    Defendant invited, solicited, encouraged, or reasonably should have foreseen the fact, extent, and manner of Plaintiff's use of its app.

112.    Defendant knew or, by the exercise of reasonable care, should have known, that the reasonably foreseeable use of its app (as developed, set up, managed, maintained, supervised, and operated by Defendant) was dangerous, harmful, and injurious when used by youth such as Plaintiff in a reasonably foreseeable manner.

113.    At all relevant times, Defendant knew or, by the exercise of reasonable care, should have known that its app (as developed, set up, managed, maintained, supervised, and operated by Defendant) posed unreasonable risks of harm to youth such as Plaintiff, which risks were known and knowable, including in light of the internal data and knowledge Defendant had regarding its app.

114.    Defendant knew, or by the exercise of reasonable care, should have known, that ordinary child users of its app, such as Plaintiff, would not have realized the potential risks and dangers of using the app, including a risk of grooming, sexual abuse, and sexual exploitation, which foreseeably can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects.

115.    Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

116.    Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by not including certain features in its app which harmed Plaintiff.

117.    Imposing a duty on Defendant would benefit the community at large.

118.    Imposing a duty on Defendant would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to Plaintiff.

119. Defendant owed a heightened duty of care to youth users of its app because the children's brains are not fully developed, meaning young people are more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

120. Defendant breached its duties of care owed to Plaintiff through its affirmative malfeasance, actions, business decisions, and policies in the development, set up, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on Defendant's own actions in managing its own app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

   a. Including features in its app that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of grooming, sexual abuse, and sexual exploitation to youth, including Plaintiff;

   b. Including features in its app that, as described above, are currently structured and operated in a manner that unreasonably creates or increases the foreseeable risk of harm to the physical and mental health and well-being of youth users, including Plaintiff, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, eating disorders, death, and other harmful effects;

   c. Maintaining unreasonably dangerous features in its app after notice that such features, as structured and operated, posed a foreseeable risk of harm to the physical and mental health and well-being of youth users; and

    d.  Facilitating unsupervised and/or hidden use of its app by youth, including by adopting protocols that allow youth users to change their own safety settings or parental controls, and create multiple and private accounts.

    e.  Inviting children on their apps and marketing to children when Defendants knew that their apps, as designed, were not safe for children.

121.    Defendant breached its duties of care owed to Plaintiff through its nonfeasance, failure to act, and omissions in the development, setup, management, maintenance, operation, marketing, advertising, promotion, supervision, and control of its app. These breaches are based on Defendant's own actions in managing its own app made available to the public, independent of any actions taken by a third party. Those breaches include but are not limited to:

    a.  Failing to implement effective parental controls;

    b.  Failing to screen users before allowing them on the app;

    c.  Failing to implement effective parental notifications, such as when a child messages another user, particularly an adult user, or when a child interacts with accounts that have been blocked by other users or suspended in the past;

    d.  Failing to require adult users to provide a phone number when signing up for an account;

    e.  Failing to implement pop-up safety notices within chats and games to warn users about inappropriate behavior;

    f.  Failing to ban IP and MAC addresses of accounts associated with known abusers;

    g.  Failing to set default safety settings to the most protective options;

    h.  Having an open chat function;

    i.  Failing to provide a transcript of a child's communications to the parent;

    j.  Failing to implement reasonably available means to monitor for, report, and prevent the use of their apps by sexual predators to victimize, abuse, and exploit youth users;

k.  Failing to provide effective mechanisms for youth users and their parents/guardians to report abuse or misuse of their apps;

l.  Failing to implement effective protocols to verify ages and identity of all users;

m.  Failing to place reasonable age restrictions on the app;

n.  Failing to separate adults from children on the app by, for example, creating a separate app for children;

o.  Failing to adequately fund its trust and safety program; and

p.  Others as set forth herein.

122.    A reasonable company under the same or similar circumstances as Defendant would have developed, set up, managed, maintained, supervised, and operated its app in a manner that is safer for and more protective of youth users like Plaintiff.

123.    At all relevant times, Plaintiff used Defendant's app in the manner in which it was intended to be used.

124.    As a direct and proximate result of Defendant's breach of one or more of its duties, Plaintiff was harmed. Such harms include the sexual exploitation of Plaintiff by a child predator and a cascade of resulting negative effects, including but not limited to damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues such as depression, anxiety, and other harmful effects.

125.    Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

126.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

127.    Defendant's conduct, as described herein, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct,

including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish the Defendant and deter others from like conduct.

128. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### THIRD CAUSE OF ACTION
### NEGLIGENCE – FAILURE TO WARN
### (By Plaintiff Against Defendant)

129. Plaintiff incorporates each and every factual allegation set forth herein.

130. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its app used by Plaintiff.

131. Plaintiff was a foreseeable user of Defendant's app.

132. Defendant knew, or by the exercise of reasonable care, should have known, that use of its app was dangerous, harmful, and injurious when used in a reasonably foreseeable manner by minors.

133. Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor users, such as Plaintiff, would not have realized the potential risks and dangers of its app, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

134. Had Plaintiff received proper or adequate warnings about the risks of Defendant's app, Plaintiff would have heeded such warnings.

135.     Defendant knew or, by the exercise of reasonable care, should have known that its app posed risks of harm to youth at all relevant times it produced, marketed, and/or sold the product. These risks were known and knowable in light of Defendant's own internal data and knowledge regarding its app at the time of development, design, marketing, promotion, advertising and distribution to Plaintiff.

136.     Because Defendant's conduct created the risk that child users of its app would be subject to grooming, sexual abuse, and sexual exploitation, Defendant owed a duty to all reasonably foreseeable users, including but not limited to minor users and their parents, to provide adequate warnings about the risk of using Defendant's app that were known to Defendant, or that Defendant should have known through the exercise of reasonable care.

137.     In addition, as described above, Defendant owed a special relationship duty to Plaintiff to protect Plaintiff against harm caused by its app and employees or by other users.

138.     Defendant owed a heightened duty of care to minor users and their parents to warn about its app's risks because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

139.     Defendant breached its duty by failing to use reasonable care in providing adequate warnings to Plaintiff, such as failing to notify parents and the general public of the following, among others:

    a.   Defendant fails to require that children have parental approval before signing up for an account;

    b.   Defendant fails to screen users before allowing them on the app;

    c.   New users of Defendant's app can identify themselves as minors, begin to use the app, and do so indefinitely, without ever receiving a safety warning, and

without ever having to provide information so that Defendant can warn the users' parents or guardians;

d. Defendant's app's default safety settings allow adults and other strangers' accounts to find, "friend," and communicate with children's accounts;

e. Defendant's parental control settings allowed children to modify their own parental control settings;

f. Defendant's app recommends that adult users and other strangers "friend" and contact child accounts;

g. Defendant fails to block the IP and MAC addresses of known abusers;

h. Adult predators use Defendant's app to target children for sexual exploitation, sextortion, and CSAM;

i. Defendant's app enables and increases risk of exposure to predators and can result in grooming, sexual abuse, and sexual exploitation, as well as their resultant physical and mental injuries;

j. Usage of Defendant's app can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

k. Usage of Defendant's app can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

l. The likelihood and severity of harm is greater for children;

m. The likelihood and intensity of these harmful effects is exacerbated by the interaction of each app's features with one another;

n. Defendant fails to verify ages, allowing adult predators to pose as children on Defendant's app;

o. Defendant's failure to verify ages allows children to bypass parental controls, safety features and default settings; and

p. Others as set forth herein.

140. A reasonable company under the same or similar circumstances as Defendant would have used reasonable care to provide adequate warnings to consumers, including the parents of minor users, as described herein.

141. At all relevant times, Defendant could have provided adequate warnings to prevent the harms and injuries described herein.

142. As a direct and proximate result of Defendant's breach of its duty to provide adequate warnings, Plaintiff was harmed and sustained the injuries set forth herein. Defendant's failure to provide adequate and sufficient warnings was a substantial factor in causing the harms to Plaintiff.

143. As a direct and proximate result of Defendant's failure to warn, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

144. The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

145. The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

146. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE – UNREASONABLE DESIGN**
**(By Plaintiff Against Defendant)**

147. Plaintiff incorporates each and every factual allegation set forth herein.

148.    At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its app used by Plaintiff.

149.    Defendant knew or, by the exercise of reasonable care, should have known, that its app was dangerous, harmful, and injurious when used by youth in a reasonably foreseeable manner.

150.    Defendant knew or, by the exercise of reasonable care, should have known that its app posed risks of harm to youth. These risks were known and knowable in light of Defendant's own internal data and knowledge regarding its app at the time of the app' development, design, marketing, promotion, advertising, and distribution to Plaintiff.

151.    Defendant knew, or by the exercise of reasonable care, should have known, that ordinary minor consumers such as Plaintiff would not have realized the potential risks and dangers of its app. Those risks include grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

152.    Defendant owed a duty to all reasonably foreseeable users to design a safe app.

153.    Defendant owed a heightened duty of care to minor users of its app because children's brains are not fully developed, resulting in a diminished capacity to make responsible decisions regarding contact with strangers online. Children are also more neurologically vulnerable than adults to abusive contact facilitated by Defendant's app because they have a hard time distinguishing between patterns of genuine friendship and grooming relationships.

154.    Plaintiff was a foreseeable user of Defendant's app.

155.    Defendant knew that minors such as Plaintiff would use its app.

156. Defendant breached its duty in designing its app.

157. Defendant breached its duty by failing to use reasonable care in the design of its app by negligently designing the app with features that specifically allow predators to find, groom, exploit, and abuse children, as described herein.

158. Defendant breached its duty by designing an app that was less safe to use than an ordinary consumer would expect when used in an intended and reasonably foreseeable manner.

159. Defendant breached its duty by failing to use reasonable care in the design of its app by negligently designing its app with features as described above that created or increased the risk of grooming, sexual abuse, and sexual exploitation for children, which can lead to a cascade of negative effects, including but not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

160. Defendant breached its duty by failing to use reasonable care to use cost-effective, reasonably feasible alternative designs, including changes to the harmful features, and other safety measures, to minimize the harms described herein, including but not limited to:

    a. Requiring children have parental approval and a parent's email address to sign-up for an account;

    b. Effective parental controls;

    c. Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

    d. Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing

45

messaging between adult users and a child with the parent's explicit permission to message the adult user;

e.  Requiring adults to provide a phone number when signing up for an account;

f.  Pop-up safety notices within chats and games to warn users about inappropriate behavior;

g.  Banning IP and MAC addresses of accounts associated with known abusers;

h.  Controlled chat option;

i.  Providing a transcript of a child's communications to the parent;

j.  Implementing reporting protocols to allow users or visitors of Defendant's app to report CSAM and adult predator accounts specifically without the need to create or log in to the apps prior to reporting;

k.  Robust age and identity verification;

l.  Reasonable age restrictions;

m.  Separating adults from children by, for example, creating a separate app for children; and

n.  Others as set forth herein.

161.    Alternative designs that would reduce the dangerous features of Defendant's app were available, would have served effectively the same purpose as Defendant's defectively designed app, and would have reduced the gravity and severity of danger Defendant's app posed minor Plaintiffs.

162.    A reasonable company under the same or similar circumstances as Defendant would have designed a safer app.

163.    At all relevant times, Plaintiff used Defendant's app in the manner in which it was intended by Defendant to be used.

164.    As a direct and proximate result of Defendant's breached duties, Plaintiff was harmed. Defendant's design of its app was a substantial factor in causing Plaintiff's harms and injuries.

165.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

166.    The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

167.    Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### FIFTH CAUSE OF ACTION
### NEGLIGENT UNDERTAKING
### (By Plaintiff Against Defendant)

168.    Plaintiff incorporates each and every factual allegation set forth above.

169.    Defendant rendered parental control services and account safety services to Plaintiff's mother.

170.    Defendant knew, or reasonably should have known, that effective parental control and account safety services were necessary for the protection of minor users.

171.    Defendant's conduct was closely connected to Plaintiff's injuries, which were highly certain to occur, as evidenced by the significance of Plaintiff's injuries.

172.    Defendant could have avoided Plaintiff's injuries with minimal cost, including, for example, by implementing parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

173.    Imposing a duty on Defendant would benefit the community at large.

174.    Imposing a duty on Defendant would not be burdensome to them because they have the technological and financial means to avoid the risks of harm to children.

175.    Defendant owed a heightened duty of care to minor users and their parents to implement parental control and account safety services that were effective and that would prevent child users from being contacted by adult accounts or strangers' accounts generally.

176.    Plaintiff's mother relied on Defendant exercising reasonable care in undertaking to render parental control and account safety services.

177.    Defendant breached its duty of undertaking by failing to use reasonable care in rendering its parental control and account safety services to prevent child users from being contacted by adult accounts or strangers' accounts generally.

178.    Defendant failed to exercise reasonable care in rendering these parental control and account safety services.

179.    Defendants' failure to exercise reasonable Defendant's failure to exercise reasonable care increased the risk of, and was a substantial factor in causing, harm to Plaintiff.

180.    Plaintiff was harmed by her mother's reliance on Defendant to provide effective parental control and account safety services.

181.    Defendant's breach of one or more of its duties was a substantial factor in causing harms and injuries to Plaintiff.

182.    Defendant's failure to exercise reasonable care increased the risk of harm to Plaintiff relative to the risk that would have existed if Defendant had not undertaken the services.

183.    If Defendant had not undertaken the services, Plaintiff's mother would have prevented Plaintiff from using a platform or would have taken additional safety measures.

184.    The harm to Plaintiff was suffered because Plaintiff and her mother relied on Defendant's undertaking of parental control services and account safety services for Plaintiff's mother.

185.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's app.

186.    The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an

entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages.

187. Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## SIXTH CAUSE OF ACTION
## STRICT LIABILITY – DESIGN DEFECT
## (O.R.C. §2307.75 *et. seq.*)
## (By Plaintiff Against Defendant)

188. Plaintiff incorporates each and every factual allegation set forth above.

189. At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its product used by Plaintiff.

190. This product was designed, manufactured, maintained, controlled, and distributed from the California headquarters of Defendant.

191. Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of the product is the same for every user that logs on or signs up for an account. This product is uniformly defective and pose the same danger to each minor user.

192. Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

193. Defendant's product is marketed and advertised to the public for the personal use of the end-user/consumer.

194. Defendant defectively designed its product to allow children to come into contact with child predators. Children are particularly unable to appreciate the risks posed by the product.

195. The defects in the design of Defendant's product existed prior to the release of this product to Plaintiff and the public, and there was no substantial change to Defendant's product

49

between the time of its upload by Defendant to public or retail channels (*e.g.*, the App Store or Google Play) and the time of its distribution to Plaintiff via download or URL access.

196.    Plaintiff used this product as intended, and Defendant knew or, by the exercise of reasonable care, should have known that Plaintiff would use this product without inspection for its dangerous nature.

197.    Defendant defectively designed its product to appeal to adult predators by making it easy to find children and enabled their contact, grooming, sexual exploitation, and sexual abuse of children, including Plaintiff.

198.    Defendant failed to test the safety of the features it developed and implemented for use on its product. When Defendant did perform some product testing and had knowledge of ongoing harm, it failed to adequately remedy its product's defects or warn Plaintiff.

199.    Defendant's product is defective in design and poses a substantial likelihood of harm for the reasons set forth herein, because the product fails to meet the safety expectations of ordinary consumers when used in an intended or reasonably foreseeable manner, and because the product is less safe than an ordinary consumer would expect when used in such a manner. Children and teenagers are among the ordinary consumers of Defendant's product. Indeed, Defendant markets, promotes, and advertises its product to pre-teen and young consumers. Pre-teen and young consumers, and their parents and guardians, do not expect Defendant's product to expose them to predators when the product is used in their intended manner by their intended audience. They do not expect the features embedded by Defendant in its product to make it easy for child predators to sign-up for accounts and find children, groom children, and sexually exploit children. They do not expect Defendant's revenue and profits to be directly tied to predators' extortion of children.

200.    Defendant's product is likewise defectively designed in that it creates an inherent risk of danger; specifically, a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior,

susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers, including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

201.    The risks inherent in the design of Defendant's product significantly outweigh any benefits of such design.

202.    Defendant could have utilized cost-effective, reasonably feasible alternative designs, including changes to the problematic features described above, to minimize the harms described herein, including, but not limited to:

     a.  Requiring children have parental approval and a parent's email address to sign-up for an account;

     b.  Effective parental controls;

     c.  Effective parental notifications, including notifying parents any time a child messages another user, particularly an adult user, or notifying parents when children interact with accounts that have been blocked by other users or suspended in the past, among other controls;

     d.  Setting default safety settings to the most protective options, including blocking direct messaging between child and adult users, or only allowing messaging between adult users and a child with the parent's explicit permission to message the adult user;

     e.  Requiring adults to provide a phone number when signing up for an account;

     f.  Pop-up safety notices within chats and games to warn users about inappropriate behavior;

     g.  Banning IP and MAC addresses of accounts associated with known abusers;

     h.  Controlled chat option;

     i.  Providing a transcript of a child's communications to the parent;

j.   Implementing reporting protocols to allow users or visitors of Defendant's product to report child sex abuse material and adult predator accounts specifically without the need to create or log in to the products prior to reporting;

k.   Robust age and identity verification;

l.   Reasonable age restrictions;

m.  Separating adults from children by, for example, creating a separate app for children; and

n.   Others as set forth herein.

203.   Alternative designs were available that would prevent child predators from finding, grooming, and exploiting children, and which would have served effectively the same purpose of Defendant's product while reducing the gravity and severity of danger posed by those product's defects.

204.   Plaintiff used Defendant's product as intended or in reasonably foreseeable ways.

205.   The physical, emotional, and economic injuries of Plaintiff were reasonably foreseeable to Defendant at the time of its product's development, design, advertising, marketing, promotion, and distribution.

206.   Defendant's product was defective and unreasonably dangerous when it left Defendant's possession and control. The defects continued to exist through the product's distribution to and use by consumers, including Plaintiff, who used the product without any substantial change in the product's condition.

207.   As a manufacturer, designer and a seller, Defendant had a duty to inform itself with the best knowledge of the risks and the defects of its product and Defendant had such knowledge. Its victims, including Plaintiff, were powerless to protect themselves against unknown harms, and Defendant should bear the costs of their injuries.

208.    Plaintiff was injured as a direct and proximate result of Defendant's defective design as described herein. The defective design of the product used by Plaintiff was a substantial factor in causing harms to Plaintiff.

209.    As a direct and proximate result of Defendant's product's defective design, Plaintiff suffered serious and dangerous injuries.

210.    As a direct and proximate result of Defendant's product's defective design, Plaintiff requires and/or will require more healthcare and services and did incur medical, health, incidental, and related expenses.

211.    Plaintiff was injured from using Defendant's defective product through no fault of Plaintiff. The fact that Plaintiff was injured by using Defendant's product means that Defendant is responsible for the injuries caused by Defendant's product and the burden shifts to Defendant to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

212.    The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's product.

213.    The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

214.    Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper

### SEVENTH CAUSE OF ACTION
### STRICT LIABILITY – FAILURE TO WARN
**(O.R.C. §2307.76, *et seq.*)**
### (By Plaintiff Against Defendant)

215.    Plaintiff incorporates each and every factual allegation set forth above.

216.    At all relevant times, Defendant designed, developed, managed, operated, tested, produced, labeled, marketed, advertised, promoted, controlled, sold, supplied, distributed, and benefited from its product used by Plaintiff.

217.    This product was designed, manufactured, maintained, controlled and distributed from its California headquarters of Defendant.

218.    Defendant's product was designed and intended to be a gaming and/or communication product. The software and architecture of the product is the same for every user that logs on or signs up for an account. This product is uniformly defective and poses the same danger to each minor user.

219.    Defendant's product is distributed and sold to the public through retail channels (*e.g.*, the Apple App "Store" and the Google Play "Store").

220.    Defendant sold and distributed its product to Plaintiff in a defective and unreasonably dangerous condition by failing to adequately warn about the risk of harm to youth as described herein, including a risk of grooming, sexual abuse, and sexual exploitation, which can lead to a cascade of harms. Those harms include but are not limited to physical injury, damage to self-worth, stigma and social isolation, reduced academic performance, increased risky behavior, susceptibility to future sexual exploitation, attachment issues, identity confusion, and profound mental health issues for young consumers including but not limited to depression, anxiety, suicidal ideation, self-harm, post-traumatic stress disorder, insomnia, death, and other harmful effects.

221.    Defendant was in the best position to know the dangers its product posed to consumers, including Plaintiff, as they had superior knowledge of the risks and dangers posed by its product and had exclusive knowledge of these risks at the time of development, design, marketing, promotion, advertising and distribution. Defendant had exclusive control of its product at all times relevant to this litigation.

222. Defendant's product is dangerous, to an extent beyond that contemplated by the ordinary user who used Defendant's product, because they enable predators to find, groom, abuse, and exploit children.

223. Defendant knew or, by the exercise of reasonable care, should have known that its product posed risks of harm to youth considering its own internal data and knowledge regarding its product at the time of development, design, marketing, promotion, advertising, and distribution.

224. These risks were known and knowable in light of Defendant's own internal data and knowledge regarding its product at the time of the product's development, design, marketing, promotion, advertising, and distribution to Plaintiff.

225. Defendant's product is defective and unreasonably dangerous because, among other reasons described herein, Defendant failed to exercise reasonable care to inform users that, among other things:

    a. Sexual predators use Defendant's product to find, contact, groom and abuse children with alarming frequency;

    b. Sexual predators use Defendant's product to solicit, produce, and distribute CSAM with alarming frequency;

    c. Sexual predators target young children for CSAM on Defendant's product with alarming frequency;

    d. Defendant's product is designed in a way that enables and increases risk of exposure to predators and resulting in sexual exploitation;

    e. Defendant's product causes grooming, sexual abuse, and sexual exploitation, and its resultant physical and mental injuries;

    f. Use of Defendant's product can increase risky and uninhibited behavior in children, making them easier targets to adult predators for sexual exploitation, sextortion, and CSAM;

g.  Use of Defendant's product can normalize abuse and pornography, leading children to abuse other children either contemporaneously or later when the children are older;

h.  New users of Defendant's product can identify themselves as minors, begin to use the product, and do so indefinitely, without ever receiving a safety warning, and without ever having to provide information so that Defendant can warn the users' parents or guardians;

i.  Defendant's failure to verify ages allows children to bypass parental controls, safety features and default settings;

j.  The likelihood and severity of harms is greater for children;

k.  The likelihood and intensity of these harmful effects is exacerbated by the interaction of each product's features with one another; and

l.  Others as set forth herein.

226.  Plaintiff was a foreseeable user of Defendant's product.

227.  Ordinary minor users would not have recognized the potential risks of Defendant's product when used in a manner reasonably foreseeable to Defendant.

228.  Had Plaintiff received proper or adequate warnings or instructions as to the risks of using Defendant's product, Plaintiff would have heeded the warnings and/or followed the instructions.

229.  Defendant's failures to adequately warn Plaintiff about the risks of its defective product were a proximate cause and a substantial factor in the injuries sustained by Plaintiff.

230.  Plaintiff was injured from using Defendant's defective product through no fault of Plaintiff. The fact that Plaintiff was injured by using Defendant's product means that Defendant is responsible for the injuries caused by Defendant's product and the burden shifts to Defendant to identify alternative causes of the alleged injuries and apportion responsibility for the alleged injuries.

231.     The nature of the fraudulent and unlawful acts that created safety concerns for Plaintiff are not the type of risks that are immediately apparent from using Defendant's product.

232.     The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

233.     Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## EIGHTH CAUSE OF ACTION
## STRICT LIABILITY – NONCONFORMANCE WITH REPRESENTATION
### (O.R.C. §2307.77, *et seq.*)
### (By Plaintiff Against Defendant)

234.     Plaintiff incorporates each and every factual allegation set forth above.

235.     As set forth in more detail above, Defendant knew about the defective conditions of its app and that the app posed serious safety risks to child users. Instead of disclosing the truth, Defendant engaged in a widespread public campaign misrepresenting the safety of its platform for children in the media, and in the materials provided to potential users of the app, as described above.

236.     Defendant made numerous misrepresentations about the safety of its app for use by minors, as described above, which were specific and widespread. Plaintiff's mother and Plaintiff relied on Defendant's false representations in deciding to allow children to play on the app.

237.     The Defendant knew of the defective condition that its app carried a significant risk to abusers' relative ease and access to minor children, yet, as set forth in more detail above, continued to misrepresent of the fact that its messaging platform was safe for minors to use.

238.    Defendant's app was defective because it failed to conform to Defendant's misrepresentations that the app was for children to use and had adequate parental controls and safety features to prevent children from abusers using the app.

239.    By making numerous material representations downplaying any potential harm associated with its app and reassuring the public, users, and their parents, including Plaintiff, that its app was safe, Defendant misled the public, users, and their parents, Plaintiff's mother, into believing its app was safe for children to use.

240.    By intentionally concealing and failing to disclose defects inherent in the design of its app, Defendant knowingly and recklessly misled the public, users, and their parents, including Plaintiff's mother, into believing that its app was safe for children to use.

241.    Discord was unsafe for children despite Defendant misrepresentations to the contrary, and this failure to conform to Defendant's representation existed at the time the app left Defendant's control when the app was accessed by minor users like the Plaintiff.

242.    Defendant knew that its concealments, omissions, and misrepresentations were material. A reasonable person, including Plaintiff's mother, would find information about the risk of grooming, sexual abuse, sexual exploitation, and other serious risks associated with the use of Defendant's app, to be important when deciding whether to allow children to use it.

243.    Defendant made numerous false representations about the safety of its app, as described above, which were specific and widespread. Plaintiff's mother and the public at large justifiably and reasonably relied on Defendant's false representations in deciding to allow children to play on the app.

244.    As a direct and proximate result of the defect resulting from Discord's non-conformance with Defendant's representations about its safety for children, Plaintiff's mother was not aware and could not have been aware of the facts that Defendant misstated, and therefore justifiably and reasonably believed that Defendant's app was safe for use.

245.    As a direct and proximate result of Plaintiff's mother's reliance on Defendant's representations, Plaintiff suffered harm when she was sexually abused on Defendant's platform.

246.     Plaintiff's mother's reliance on Defendant's misrepresentations about the safety of its app were substantial factors in causing harm to Plaintiff.

247.     The conduct of Defendant, as described above, was intentional, fraudulent, willful, wanton, reckless, malicious, fraudulent, oppressive, extreme, and outrageous, and displayed an entire want of care and a conscious and depraved indifference to the consequences of its conduct, including to the health, safety, and welfare of its customers, and warrants an award of punitive damages in an amount sufficient to punish Defendant and deter others from like conduct.

248.     Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## NINTH CAUSE OF ACTION
## RECEIPT, DISTRIBUTION, AND POSSESSION OF CHILD PORNOGRAPHY
## 18 U.S.C. § 2255 for violation of § 2252
## (By Plaintiff Against Defendant)

249.     Plaintiff incorporates each and every factual allegation set forth above.

250.     Defendant committed violations of 18 U.S.C. § 2252.

251.     Plaintiffs was a minor at the time of Defendant's violations, and is victim of the violations of Sections 1591, 2252, and 2252A and suffered personal injury as a result of such violations and is eligible to sue and recover damages and other forms of relief under 18 U.S.C. § 2255.

252.     Defendant knowingly received, possessed, and distributed child pornography depicting Plaintiff.

253.     At all times relevant, Defendants had technology available to it and that it used, as well as systems in place, to detect child sexual abuse material, including the material sent to it of Plaintiff and to detect the exploitation of Plaintiff.

254.     At all times relevant, Defendants had AI, Machine Learning Classifiers, a Trust and Safety team, and Automated Detection Tools available to it and that it used, and it knew and should have known about the child pornography depicting Plaintiff that was on its platform and being exchanged on its platform.  Defendants failed to take action in a reasonable manner or in a reasonable amount of time to stop the material from being exchanged, to remove the material and

to stop engaging in the aiding and abetting of the distribution, use and exchange of such child pornography.

255.    Defendant's receipt, distribution, advertising, and possession of child pornography occurred in or affected interstate or foreign commerce.

256.    As a proximate result of Defendant's violations, Plaintiff suffered serious harm, including physical, psychological, financial, and reputational harm. Defendant's conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights and safety. Plaintiff is entitled to injunctive relief, compensatory and punitive damages, and the costs of maintaining this action. 18 U.S.C. § 2252A(f).

**TENTH CAUSE OF ACTION**
**FAILURE TO REPORT CHILD ABUSE**
**18 U.S.C. § 2255 for violation of § 2258A**
**(By Plaintiff Against Defendant)**

257.    Plaintiff incorporates each and every factual allegation set forth above.

258.    Defendant committed violations of 18 U.S.C. § 2258A.

259.    Plaintiffs was a minor at the time of Defendant's violations, and is victim of the violations of Sections 1591, 2252, 2252A, and 2258A and suffered personal injury as a result of such violations and is eligible to sue and recover damages and other forms of relief under 18 U.S.C. § 2255.

260.    Defendant's app Discord is a provider under 18 U.S.C. § 2258A and has a duty to report child sex abuse material.

261.    At all times relevant, Defendants had technology available to it and that it used, as well as systems in place, to detect child sexual abuse material, including the material sent to it of Plaintiff and to detect the exploitation of Plaintiff.

262.    At all times relevant, Defendants had AI, Machine Learning Classifiers, a Trust and Safety team, and Automated Detection Tools available to it and that it used, and Defendants knew and should have known about the child pornography depicting Plaintiff that was on its platform and being exchanged on its platform.  Defendants failed to take action in a reasonable manner or in a reasonable amount of time to stop the material from being exchanged, to remove the material and to stop engaging in the aiding and abetting of the distribution, use and exchange of such child pornography.

263.    Defendant obtained actual knowledge of the facts and circumstances of Plaintiff's abuse and violations of Sections 1591, 2252, and 2252A when child pornography depicting Plaintiff was received, distributed, and possessed through Defendant's app discord.

264.    Defendant knowingly and willingly failed to report these violations after child pornography was sent and received on Defendant's app discord.

265.    As a proximate result of Defendant's violation of 18 U.S.C. § 2258A, Plaintiff suffered serious harm, including physical, psychological, financial, and reputational harm. Defendant's conduct was malicious, oppressive, or in reckless disregard of Plaintiff's rights and safety. Plaintiff is entitled to injunctive relief, compensatory and punitive damages, and the costs of maintaining this action. 18 U.S.C. § 2252A(f).

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the above-referenced claims and causes of action, and as follows:

1.  Past, present, and future general damages, the exact amount of which has yet to be ascertained, in an amount which will confirm to proof at time of trial, to compensate Plaintiff for injuries sustained as a result of the use of Defendant's product, including but not limited to physical pain and suffering, mental anguish, loss of enjoyment of life, emotional distress, and expenses for medical treatments;

2.  Past, present, and future economic and special damages, according to proof at the time of trial;

3.  Impaired earning capacity according to proof at the time of trial;

4.  Medical expenses, past and future, according to proof at the time of trial;

5.  Punitive or exemplary damages according to proof at the time of trial;

6.  Attorneys' fees;

7.  For costs of suit incurred herein;

8.  Pre-judgment and post-judgment interest as provided by law; and

9.  For such other and further relief as the Court may deem just and proper.

## VIII.  JURY DEMAND

Plaintiff hereby demands a trial by struck jury on all claims so triable.

Date:  August 27, 2025                    Respectfully submitted,


/s/ Kristina Aiad-Toss
Kristina Aiad-Toss (0101336)
Meagan Verschueren (*pro hac vice* forthcoming)
Katie Llamas (*pro hac vice* forthcoming)
**Singleton Schreiber LLP**
291 Camino de la Reina, Ste. 1025
San Diego, CA 92108
Telephone: (619) 771-3473
Facsimile: 619-255-1515
ktoss@singletonschreiber.com
mverschueren@singletonschreiber.com
kllamas@singletonschreiber.com


Alexandra M. Walsh (*pro hac vice* forthcoming)
Anapol Weiss
14 Ridge Square, NW, 3rd Floor
Washington, DC 20016
Telephone: (771) 224-8065
Facsimile: (215) 735-2211

D. Patrick Huyett (*pro hac vice* forthcoming)
Kristen Varallo (*pro hac vice* forthcoming)
**Anapol Weiss**
One Logan Square
130 North 18th Street, Suite 1600
Philadelphia, PA 19103
Telephone: (215) 608-9645
Facsimile: (215) 735-2211
kvarallo@anapolweiss.com
phuyett@anapolweiss.com

*Attorneys for Plaintiff Jane Doe*