IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | CASE NO. 1:25-CV-01789 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| DISCORD INC., | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

This matter is now before the Court on two separate motions: *Defendant Discord Inc.'s Motion to Dismiss* (ECF #29)*; and Plaintiff's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a)* (ECF #45).[1]  Both motions are fully briefed and ready for ruling.  In addition to considering the parties' written briefing on each of the issues raised by these motions, the Court held oral argument on January 28, 2026, on both motions after the completion of merits briefing, (ECF #47, *Minutes of Proceedings*, Oral Argument 01/28/2026). This was followed by post-argument briefing.

---

[1]

While the *Motion to Dismiss* was filed prior to the briefing on the *Motion to Transfer Venue*, it makes analytical sense for the Court to address the *Motion to Transfer Venue* first, before engaging in an analysis of the substantive merits arguments contained in the briefing on the *Motion to Dismiss*. *See ProReo Settlement Servs., LLC v. Lendingtree, Inc.*, 780 F. Supp. 3d 749, 752 (N.D. Ohio 2025) ("As between the motion to transfer venue and the motion to dismiss for failure to state a claim, the Court proceeds with the motion to transfer venue in the interest of judicial economy"); *Smith v. General Information Solutions, Inc.*, No. 18-CV-230, 2018 U.S. Dist. LEXIS 143527, at *7 (S.D. Ohio Aug. 23, 2018) ("Contrary to Defendant's argument, the Court finds it appropriate and in the interest of judicial economy to consider first the Plaintiff's Motion to Transfer Venue").

For the reasons stated below, *Plaintiff's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a)*, (ECF #45), is DENIED, and *Defendant Discord Inc.'s Motion to Dismiss*, (ECF #29), is GRANTED, with prejudice.

## I. FACTS AND PROCEDURAL HISTORY

### *Plaintiff's Complaint*

On August 27, 2025, Plaintiff Jane Doe,[2] filed this action against Defendant Discord Inc. ("Discord"), an online messaging service, seeking "to recover damages arising from the severe injuries that Plaintiff suffered because of Discord's conduct in creating, designing, marketing, and distributing its mobile- and web-based social communication applications." (ECF #1, *Complaint*).[3] The *Complaint* asserts that Discord "recklessly and deceptively operat[ed] its business" in a way that led to the sexual exploitation of Plaintiff, Jane Doe, who was 16-years-old when she first started using Discord's online messaging service. (ECF #1, ¶¶ 80). Specifically, Plaintiff alleges that "[w]hen Plaintiff was seventeen (17) years old, she was manipulated and groomed through Discord's dangerous app by a convicted sex offender who exploited her vulnerabilities[4] and sexually abused her[,]" wherein "[t]he predator sent Plaintiff

---

[2]
    On October 15, 2025, the Court granted *Plaintiff's Unopposed Motion for Protective Order and Leave to Proceed Under Pseudonym* (ECF #10), to litigate this case under the name "Jane Doe." (ECF #14).

[3]
    Discord's messaging service, comprised of various a mobile- and web-based social communication applications, is often referred to in the *Complaint* as an "app" or "apps." (ECF #1, *introductory paragraph*).

[4]
    The *Complaint* describes Plaintiff as a [now] 19-year-old woman who was an avid user of Discord's app for several years, who, as a child, was diagnosed with selective mutism, which significantly impaired her ability to communicate verbally in social settings. (ECF #1, ¶ 4).

graphic messages describing sexual acts he intended to do to her, sent her sexually explicit images of himself, coerced her into sending graphic, sexually explicit images and videos of herself, and made multiple attempts to meet Plaintiff in person." (ECF #1, ¶ 5).

The *Complaint*, as filed, alleged ten causes of action, under Ohio common law,[5] Ohio statutes, or federal statutes:

(First)    "Fraudulent Concealment and Misrepresentation," *under* Ohio common law;

(Second)    "Negligence (General)," *under* Ohio common law;

(Third)    "Negligence (Failure to Warn)," *under* Ohio common law;

(Fourth)    "Negligence (Unreasonable Design)," *under* Ohio common law;

(Fifth)    "Negligent Undertaking," *under* Ohio common law;

(Sixth)    "Strict Liability (Design Defect)," *under* OHIO REV. CODE § 2307.75, *et seq.*;

(Seventh)    "Strict Liability (Failure to Warn)," *under* OHIO REV. CODE § 2307.76, *et seq.*;

(Eighth)    "Strict Liability (Nonconformance with Representation)," *under* OHIO REV. CODE § 2307.77, *et seq.*;

(Ninth)    "Receipt, Distribution, and Possession of Child Pornography," *under* 18 U.S.C. § 2255, *for violation of* 18 U.S.C. § 2252; and

(Tenth)    "Failure to Report Child Abuse," *under* 18 U.S.C. § 2255, *for*

---

[5]    While the common law basis for Causes of Action "First" through "Fifth" is not explicitly stated in the paragraphs of the *Complaint* as "Ohio common law," Plaintiff's filing of this case in federal court as a diversity action, (*Complaint*, ¶ 13), and her citation of Ohio statutes as the bases for Causes of Action "Sixth," "Seventh," and "Eighth," indicate application of Ohio common law in connection with the "First" through "Fifth" Causes of Action. *See Erie Railroad v. Tompkins*, 304 U.S. 62, 78 (1938) (federal courts exercising diversity jurisdiction must apply the pertinent state substantive law and federal procedural law).

-3-

*violation of* 18 U.S.C. § 2258A.

(ECF #1, ¶¶ 89-263).[6] Subsequent to the filing of the *Complaint*, Plaintiff stated that she is no longer pursuing her "Ninth" and "Tenth" Causes of Action, asserted under federal law. (*See* ECF #38, *Plaintiff's Opposition to Motion to Dismiss*, p.1) ("Plaintiff is no longer pursuing her statutory claims 9 and 10).[7]

### *Defendant's Motion to Dismiss*

On November 3, 2025, Defendant Discord filed a *Motion to Dismiss* (ECF #29), asserting five grounds for dismissal, as stated in Defendant Discord's words:

> *First*, Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1), bars the claims. Section 230 provides broad immunity from claims that would require online publishers (like Discord) to perfectly monitor, screen, block, or remove content created by third parties. Plaintiff's claims seek to impose an unprecedented duty on messaging apps to prevent all criminal conduct by users and essentially ask the Court to hold Discord liable for failing to screen for and block the private messages Plaintiff exchanged with her assailant. [*Remaining text omitted*].

> *Second*, the First Amendment also bars Plaintiff's negligence and product liability claims. Under *Smith v. California*, 361 U.S. 147 (1959), Discord cannot be liable for transmitting illicit messages Plaintiff exchanged with an adult unless Discord actually knew the character of the messages that made them unlawful. [*Remaining text omitted*].

> *Third*, all of the state law claims fail as a matter of law. Plaintiff cannot allege proximate causation given the alleged intervention of third-party criminal conduct. Plaintiff's product liability claims also fail because Discord is a messaging service that transmits speech, not a tangible product

---

[6]   Beginning with Part II of this *Memorandum of Opinion*, Plaintiff's "Causes of Action" will be thereafter be referred to as "Claims" and the text-based numeric references, such as "First," "Second," "Third," *etc.*, will be referred to numerically, *e.g.*, "1," "2," "3," *etc.*

[7]   With this, it follows that Plaintiff's invocation of the Court's "federal question" jurisdiction, asserted at paragraph 14 of the *Complaint*, no longer applies. (*See* ECF #1, ¶ 14).

subject to product liability law, and because the app's alleged dangers are inherent to online communication.  Plaintiff's negligence claims fail because Discord owed her no actionable duty.  And her fraudulent concealment and misrepresentation claim, which is subject to the heightened pleading standard of Fed. Rule of Civ. Proc. 9(b), fails because the Complaint identifies no actionable misrepresentation, does not allege Discord owed any duty to disclose, admits that Discord concealed nothing[,] and alleges no facts indicating that Plaintiff (or her parents) did or could have reasonably relied on even the putative omissions or misrepresentations.

*Fourth*, the receipt, distribution, and possession of child pornography claim fails because Plaintiff does not allege Discord had actual knowledge of this material.

*Finally*, the failure to report child abuse claim fails because there is no private right of action to bring such a claim, and (again) because Plaintiff does not allege that Discord had actual knowledge of the exploitative material.

(ECF #29, *Defendant Discord Inc.'s Motion to Dismiss*, pp.1-2).

With Plaintiff's abandonment of her "Ninth" Cause of Action (Receipt, Distribution, and Possession of Child Pornography) and "Tenth" Cause of Action (Failure to Report Child Abuse), Defendant's final two arguments for dismissal are no longer at issue.

### *Plaintiff's Motion to Transfer Venue*

On January 26, 2026, Plaintiff filed *Plaintiff's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a)*, (ECF #45).[8]  The basis for Plaintiff's motion was that, on September 18, 2025, three weeks after the filing of her *Complaint*, a motion was

---

[8] A few days earlier, on January 23, 2026 (in anticipation of the January 28, 2026, in-person oral argument), Plaintiff filed *Notice of Forthcoming Motion to Transfer*, (ECF #43), notifying the Court of her intent to file a motion to transfer, and requesting the Court to postpone the January 28, 2026 oral argument pending resolution of the anticipated transfer motion.  On January 26, 2026, just prior to the filing of Plaintiff's formal motion, Defendant filed a response in opposition to the anticipated motion to transfer.  (ECF #44, *Defendant Discord Inc.'s Response to Notice of Forthcoming Motion to Transfer*).

filed with the Judicial Panel on Multidistrict Litigation ("JPML") seeking transfer and coordination, or consolidation under 28 U.S.C. § 1407, of 31 lawsuits against a different defendant, Roblox Corporation ("Roblox"), the complaints in which allege that Roblox, which owns, operates, designs, and markets a children's gaming app called (unsurprisingly) "Roblox," facilitated the targeting and grooming of children using the Roblox app by child predators also using the Roblox app, who, in many cases then "seamlessly transferred their interactions from Roblox to other apps, most often Discord, where the predators coerced the plaintiffs into sending sexually explicit images or videos or meeting in person and, in many cases, sexually assaulting them." (*See* ECF #45, pp.2-3). Thirteen of the original 31 cases identified in the motion filed with the JPML also name Discord as a defendant, and, as of the time of the completion of briefing on that motion, 17 of the then-45 cases did so. (*Id.* at p.3). .

On December 12, 2025, the JPML granted the motion and transferred the cases against Roblox (and sometimes Discord), which had grown to close to 80 cases by the time of transfer, to the U.S. District Court for the Northern District of California for coordinated or consolidated pretrial proceedings. (ECF #45, at p.3, identifying the matter as *In re: Roblox Corp. Child Sexual Exploitation & Assault Litig.*, MDL No. 3166, 2025 U.S. Dist. LEXIS 260195 (J.P.M.L. Dec. 12, 2025)). Admittedly, the cases against Roblox will involve many common issues of fact and law. In granting the motion, the JPML noted:

> Plaintiffs in these actions allege that they (as minors) or their minor children were sexually exploited and, in some cases, assaulted by child predators who targeted and groomed them through the highly popular Roblox gaming platform. Plaintiffs contend that, having established a connection with the minor plaintiffs on Roblox, the predators then persuaded the minors to continue their interactions, and often to exchange sexually explicit images, on a second platform such as Discord, Snapchat, or Instagram, or via texting or video-calling on a cellular phone. Plaintiffs

> assert substantially identical claims for fraudulent and negligent misrepresentation, negligence, failure to warn, and design defect.
>
> These actions will involve common questions of fact concerning the extent of Roblox's knowledge that its platform was being used by child predators to target and groom children, whether Roblox made false representations that Roblox is safe for children to use, whether Roblox had the means to implement effective parental controls and safety features (such as age and identity verification) that would have prevented the sexual exploitation of children, and whether Roblox provided adequate warnings about the risks of sexual exploitation associated with children's use of its platform. Those actions that involve a second, non-Roblox platform defendant will involve highly similar factual questions regarding their respective platforms. Questions such as the technological feasibility of enhanced child safety features likely will be highly complex and to require extensive fact and expert discovery. Centralization will avoid duplicative discovery and *Daubert* motions regarding this and other issues.

*In re: Roblox Corp. Child Sexual Exploitation & Assault Litig.*, 2025 U.S. Dist. LEXIS 260195, at \*2-\*3. Though, Plaintiff admits that if this matter were to be sent to the Northern District of California, it would *not* be handled as part of the MDL litigation, but rather would likely proceed "alongside" the MDL action in a separate action within the same court (though perhaps before a different judge than the one assigned to the MDL case).[9] (*See* ECF #45, at pp.7-8) ("To be sure, Jane's case is not expected to be eligible for formal inclusion in the MDL because it does not name Roblox as a defendant.").

In opposition to the *Motion to Transfer Venue*, Defendant Discord notes that "Plaintiff is an Ohio resident who allegedly suffered harm in Ohio and seeks relief under Ohio law. This lawsuit was filed in Ohio, where Plaintiff, her family, her healthcare providers, her teachers, and the predator all reside." (ECF #50, *Defendant Discord Inc.'s Opposition to Plaintiff's Motion to*

---

[9]

The judge assigned to the MDL matter is Chief U.S. District Judge Richard Seeborg, of the U.S. District Court for the Northern District of California, whose Chambers are located in San Francisco.

*Transfer Venue*, p.1).  Specifically, Discord argues that, first, the factor of the convenience of witnesses favors keeping this case here, as "[a]ll the witnesses to Plaintiff's alleged injuries – her family, healthcare providers, teachers, and the man who allegedly harmed her – are here in Ohio," and that a federal court in California cannot compel these witnesses, who are not parties to the case, to attend trial." (ECF #50, p.1).  Moreover, "the relevant sources of proof – Plaintiff's medical and mental health records, school records, and any law enforcement or investigative files related to the alleged harm – are in Ohio, as are the custodians of those records." (*Id.*).  Discord also contends that the interests of justice weigh against transfer as it would not promote judicial economy.  As asserted, "The multidistrict litigation in California to which Plaintiff cites involves fundamentally different claims:  Plaintiffs allege that they were groomed through the Roblox gaming platform and then migrated to other social media and messaging platforms, where the exploitation continues,  None of the common questions of fact identified by the Judicial Panel on Multidistrict Litigation – which created the MDL – are present here." (*Id.*, at p.2).  After noting Plaintiff's concession that this case would not be included in the MDL if transferred, Defendants further note that "[t]here is no guarantee the same judge would be assigned to the case, nor that that judge would coordinate the proceedings." (*Id.*).  Discord also contends that "[f]ar from being efficient, a transfer would slow this case down, as case management orders, much less operative pleadings, have not even been filed in the MDL" (as of the date of completion of the briefing on the motions now before this Court). (*Id.*).

Each of the motions are discussed more fully below.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Plaintiff's Motion to Transfer Venue

Under 28 U.S.C. § 1404(a), a court may transfer a civil case to any other district or division where it may originally have been brought "[f]or the convenience of parties and witnesses [and] in the interest of justice[.] The party seeking transfer bears the burden of demonstrating that these factors weigh "strongly" in favor of transfer. *First Fin. Bank v. Knapschaefer*, 697 F. Supp. 3d 733, 737 (N.D. Ohio 2023).

A plaintiff's choice of forum is typically owed substantial deference. The Court notes here that *keeping* this case in the Northern District of Ohio – the forum plaintiff originally chose, where plaintiff resides, and where all the witnesses and evidence related to the harms she alleges she suffered is located – would be *consistent* with that deference. Now, however, five months after filing her *Complaint* exercising that choice (as of the time of the filing of the transfer motion), following a number of conferences before this Court, after almost three months since the filing of Discord's *Motion to Dismiss*, and on the literal eve of the in-court hearing on the *Motion to Dismiss* held on January 26, 2026, Plaintiff seeks to exercise a *new* choice of forum, ostensibly on the ground of having it litigated "alongside" (but not within) the *Roblox* MDL, would increase efficiency.[10] The Court also notes that the deference accorded to a plaintiff's choice of forum is owed less deference where the plaintiff "has little or no connection to the chosen forum." *United States v. Cinemark USA, Inc.*, 66 F. Supp. 2d 881, 889 (N.D. Ohio 1999). In fact, one court within the Sixth Circuit has found that the "deference rule" does not apply at all

---

[10]  Defendant Discord intimates that another reason may be to avoid the operation of Ohio law to Plaintiff's "product liability" claims. (See ECF #50, *Defendant Discord Inc.'s Opposition to Plaintiff's Motion to Transfer Venue*, p.10).

where the plaintiff seeks a transfer from the forum she chose . . . in the first place." *Energy Conversion Devices Liquidation Tr. v. Trina Solar Ltd.*, 2014 WL 2763648, at *2 (E.D. Mich. June 18, 2014) (denying transfer to the Northern District of California after that court denied a motion to dismiss in a parallel proceeding, "It is of some interest that Plaintiff's transfer motion was filed only about two weeks after it attained a favorable result in the Northern District of California").

While this Court may not ascribe to such a hard-line rule when a potential joining with a later-consolidated MDL proceeding is at issue, such a result is not contemplated here. After considering the arguments of counsel on each of the motions, in the merits briefing, at the oral argument on the motions, and in the post-argument supplemental briefing, the Court finds that the interests of justice favor denying the motion to transfer this case to the Northern District of California to, essentially, start all over with merits briefing on the substantive issues raised in the *Motion to Dismiss*. The arguments presented in this Court are raised in connection with the claims of a case relating *solely to Discord*, in a matter that does not involve *any* interaction or connection to Roblox. It is more efficient to address them here, than to transfer the matter so as to run "alongside" (but not within) an MDL proceeding whose central focus is plaintiffs' *interactions with Roblox* and the mechanisms of *Roblox's* platform in light of the claims made in those cases. Greater efficiency of the claims *against Discord* would be achieved by keeping this case in the Northern District of Ohio. The Court also finds that, because the law is clear that Plaintiff's claims cannot survive the relative statutory "immunity" provided by Section 230 of the Communications Decency Act,[11] which applies to each of Plaintiff's claims, there is no real

---

[11] While the provisions of Section 230 of the Communications Decency Act are often

purpose to be served by transfer to another court.

## B. <u>Defendant's Motion to Dismiss</u>

A *Complaint* is subject to dismissal if it fails to state a claim for relief that is factually plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Also, the failure to assert a "viable legal theory" is another factor warranting dismissal. *Wertheim v. Metro. Life Ins. Co.*, 2017 WL 2198155, at *1 (N.D. Ohio May 17, 2017) ("To survive a motion to dismiss, a 'complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.'") (quoting *Mezivob v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

### 1. *Section 230 of the Communications Decency Act*

Section 230 of the Communications Decency Act, provides, in pertinent part:

> **§ 230. Protection for private blocking and screening of offensive material**
>
> \* \* \* \* \*
>
> **(c) Protection for "Good Samaritan" blocking and screening of offensive material**
>
> **(1) Treatment of publisher or speaker**
>
> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another content provider.
>
> **(2) Civil Liability**

---

referred to as "immunity," *see, e.g., Doe v. Grindr Inc.*, 128 F.4th 1148, 1151 (9th Cir. 2025) ("interactive computer service providers are immune from state law liability when plaintiff seek to treat those providers as publishers of third party content"), it is not a *general* immunity from liability for *any* claims that may stem from third-party content, but rather immunity for those claims that would treat the service provider as a publisher or speaker, which is the case here. *Id.*

> No provider or user of an interactive computer service shall be held liable on account of –
>
> > (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or
> >
> > (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1)[12]

47 U.S.C. § 230(c)(1).

The statute, which was the result of an amendment of Title II of the Communications Act of 1934, 47 U.S.C. § 201, *et seq.*, to add Section 230, in the earlier years of the Internet, represented the findings of Congress recognizing "[t]he rapidly developing array of Internet and other interactive computer services," 47 U.S.C. § 230(a)(1), and stated Congress' policy "to promote the continued development of the Internet and other interactive computer services" and "to remove disincentives for the development and utilization of blocking and filtering technologies." 47 U.S.C. § 230(b)(1) & (4). This was intended to eliminate the "grim choice" that common law rules of liability would otherwise present to service providers – to voluntarily filter user content but face liability for harmful content they fail to catch, or "bury their heads in the sand and ignore problematic posts" to escape such liability altogether. *See Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc) (cited with approval in *Jones*, 755 F.3d at 412); *Backpage.com LLC v. Cooper*, 939 F. Supp. 2d 805, 822 n.1 (M.D. Tenn. 2013) (citing same); *Merritt v. LexisNexis Screening Sols.*,

---

[12] The text of Section 230 contained in the United States Code contains a footnote after the phrase "paragraph (1)" noting: "*So in original. Probably should be "subparagraph (A)".*

*Inc.*, 2013 WL 3242952, at *3 (E.D. Mich. 2013) (same).

Section 230(c)(1) thus provides online service providers with immunity from claims that seek to hold them liable for failing to perfectly monitor, screen, block, modify, edit, or remove content provided by third parties. *See O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016); *Barnes v. Yahoo!, Inc.*, 570 F3d 1096, 1102 (9th Cir. 2009). As noted by the Sixth Circuit, "[i]f a website displays content that is created entirely by third parties, . . . [it] is immune from claims predicated on that content." *O'Kroley*, 831 F.3d at 355 (quoting *Jones*, 755 F.3d at 408). Under Section 230, "close cases . . . must be resolved in favor of immunity," and "at an earl[y] stage of litigation." *Jones*, 755 F.3d at 408, 417 (Section 230 provides "an immunity from suit rather than a mere defense to liability").

The purpose of Section 230 is to "'encourage service providers to self-regulate the dissemination of offensive material over their services'" by immunizing them from liability when offensive material slips through their voluntary regulation mechanisms. *Jones v. Dirty World Ent. Recordings*, 755 F.3d 398, 408 (6th Cir. 2014) (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)). The reality is that, as is evident in this case and others like it, and in light of the volume of the millions of internet users and communications sent, often items of offensive, and troubling, communications get past the barriers put in place by service providers.

Courts are bound to follow the law as it exists, and in the vast majority of cases such as this, Section 230 compels dismissal of claims seeking to hold platforms liable for activity amounting to sexual exploitation of one user by another when the factual predicate is that the two users engaged in messaging using the platform's service – as measured against most

-13-

common law causes of action. *See, e.g., Doe v. Grindr, Inc.*, 128 F.4th 1148, 1153-54 (9th Cir. 2025) (fifteen-year-old minor downloaded and signed up for Grindr dating app, representing that he was 18 years old; Grindr app matched plaintiff with four adult men, who sexually abused plaintiff; plaintiff asserted state law claims of defective design, defective manufacture, negligence, failure to warn, and negligent misrepresentation; dismissal of claims affirmed as barred by Section 230); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (thirteen-year-old minor opened account on MySpace, representing that she was 18 years old; minor plaintiff met 19-year-old online, and was later sexually assaulted; dismissal of state law negligence and gross negligence claims affirmed as barred by Section 230); *In re Facebook, Inc.*, 625 S.W.3d 80, 101 (Tex. 2021) (victims of sex trafficking brought suit against Facebook claiming they became entangled with abusers through site; court directs state district court to dismiss claims of negligence, gross negligence, negligent undertaking, and products liability as barred by Section 230); *Doe, ex rel Roe v. Snap, Inc.*, 2023 WL 4174061, at *1 (5th Cir. 2023) (minor child, who was sexually abused by high school teacher who used Snapchat app to send plaintiff sexually explicit conduct, later leading to sexual contact between plaintiff and teacher, brought claims against Snapchat alleging negligent undertaking, negligent design, and gross negligence; court affirmed district court's dismissal of claims as barred by Section 230); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12,21 (1st Cir. 2016) (plaintiffs, three minor-age women, who claimed to have been victims of sex-trafficking, sued Backpage alleging that the Backpage app engaged in course of conduct designed to facilitate sex traffickers' efforts to advertise their victims on its website; dismissal of "unfair or deceptive acts or practices" and other state law claims affirmed as barred by Section 230); *Doe II v. MySpace, Inc.*, 175 Cal. App. 4th 561, 572-

-14-

75 (Cal. Ct. App. June 30, 2009) (minor females brought negligence, gross negligence, and strict products liability claims against MySpace app alleging that they were sexually assaulted by men they met through site; court affirmed dismissal of claims as barred by Section 230); *L.W. v. Snap, Inc.*, 675 F. Supp. 3d 1087, 1101 (S.D. Cal. 2023) (district court dismissal of state law claims of products liability and false advertising brought as a putative class action by minor-age user of instant messaging apps, alleged to be inherently dangerous and advertised in a way that facilitated sex crimes against children, as barred by Section 230); *Doe v. Grindr, LLC*, 2023 WL 7053471, at *2 (M.D. Fla. 2023) (Thirteen-year-old minor, who provided a false birth date to register with "adult only" Grindr app, brought action alleging state law claims of negligence and intentional infliction of emotional distress related to sexual activity facilitated by Grindr app; claims dismissed by district court as barred by Section 230); *Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242, 1252 (S.D. Fla. 2020) (Section 230 preempted minor's proposed state law claims for negligence and strict liability for failure to warn about dangers of being sexually exploited when using messaging service; granting motion to dismiss for failure to state claim).[13]

---

[13]

The Court interprets the law as it exists. Admittedly, a number of courts have commented on the practical application of Section 230 in today's world, in light of the fact that Section 230's provisions have remained essentially the same since its enactment in the early days of internet use. *See, e.g., In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021):

> The internet today looks nothing like it did in 1996, when Congress enacted section 230. The Constitution, however, entrusts to Congress, not the courts, the responsibility to decide whether and how to modernize outdated statutes. Perhaps advances in technology now allow online platforms to more easily police their users' posts, such that the costs of subjecting platforms like Facebook to heightened liability for failing to protect users from each other would be outweighed by the benefits of such a reform. On the other hand, perhaps subjecting online platforms to greater liability for their users' injurious activity would reduce freedom of speech on the internet by encouraging platforms to censor "dangerous" content to avoid lawsuits. Judges are poorly equipped to make such

The Court now turns to the specifics of Plaintiff's *Complaint.*

### *(a). Application of Section 230*

As noted above, Section 230 applies where (1) the defendant is an interactive computer service, and (2) the claim "treat[s]" the defendant as the publisher (3) of content provided by a third party. *Jones*, 755 F.3d at 409. The Court examines each of these three factors in turn.

### *"Is Discord an Interactive Service Provider?"*

An interactive computer service "provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2). There is no dispute that Defendant Discord qualifies as an "interactive computer service" under the statute. (*See* ECF #38, *Plaintiff's Opposition to Motion to Dismiss*, p.5) ("Plaintiff does not dispute that Discord is an 'interactive computer service' under 47 U.S.C. § 230(f)(2)"). Thus, this element of whether Section 230 applies is satisfied.

The determinative issue then becomes whether Plaintiff's claims – at their essence – seek to treat Discord as a "publisher" or "speaker" of the offending content (which often also applies where a "design related" claim regarding a user's ability to access such content is at issue). As there are no allegations that Discord was the creator of any of the offensive messaging identified in the *Complaint*, in effect, a "speaker," the pertinent focus is on whether Discord was a "publisher" of the messaging exchanged on its site, as accessed or received by Plaintiff.

---

judgments, and even if it were otherwise, "[i]t is for Congress, not this Court, to amend the statute if it believes" it to be outdated.

*Id.* at 101 (quoting *Dodd v. United States*, 545 U.S. 353, 359-60 (2005)).

*"Do Plaintiff's Claims Treat Discord as a Publisher (or Speaker)?"*

A claim treats a defendant as a publisher if it seeks to hold the defendant liable for "providing access to, [or] reproducing" offensive content on its site, or for reviewing, editing, or "deciding whether to publish, withdraw, postpone[,] or alter content" that is created by third parties. *O'Kroley v. Fastcase, Inc.*, 831 F.3d 352, 355 (6th Cir. 2016) (citing *Jones*, 755 F.3d at 416). Courts have interpreted this standard broadly. *See, e.g., Fair Hous. Council of San Fernando Valley v. Roommates.com LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc) ("[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230."). The key inquiry is determining the nature of "the duty that the plaintiff alleges the defendant violated[.]" *Barnes v. Yahoo!, Inc.*, 570 F3d 1096, 1102 (9th Cir. 2009). If that duty involves the exercise of "traditional editorial functions" – such as deciding *whether* to publish, remove, edit, monitor, or screen third party content, *which often also involves examination of the measures taken by a service provider to transmit, remove, edit, monitor, or screen third party content*, then Section 230 bars the claim. *Jones*, 755 F.3d at 416; *Barnes*, 570 F.3d at 1102, 1105.

The Court finds that each of Plaintiff's claims ultimately treat Discord as a "publisher" of the content at issue, such that Section 230 applies.

The recent case of *Doe v. Grindr, Inc.*, 128 F.4th 1148 (9th Cir. 2025), is instructive and presents a factual (and legal) posture directly applicable to this case. In *Grindr*,[14] a 15-year-old

---

[14]    While there are numerous cases in this area involving the operation of Section 230 in light of claims brought against, or involving the "Grindr" app, the short-form case reference of "*Grindr*" used throughout this *Memorandum of Opinion* will refer to the court opinion in *Doe v. Grindr, Inc.*, 128 F.4th 1148 (9th Cir. 2025).

-17-

minor plaintiff asserted claims – identical to those brought here – of negligence, product liability, failure to warn, and misrepresentation against the dating app Grindr for injuries he suffered after he had signed up for the Grindr app – representing that he was 18 years old – and the Grindr app then matched plaintiff with four adult men, who sexually abused him. As in this case, the plaintiff in *Grindr* alleged that Grindr's failure to have in place mechanisms and safety barriers to prevent him from communicating with adult sexual assault perpetrators breached a "duty not to design or manufacture defective products. *Grindr*, 128 F.4th at 1153. And, as in this case, plaintiff argued that Section 230 did not bar his claims because they arose from Grindr's own "features and functions" – such as its (allegedly defective or inadequate) age-verification gateway and other messaging features of the Grindr platform. *Id.* The Ninth Circuit rejected plaintiff's arguments, and held that the alleged harm was directly tied to the Grindr platform's "alleged duty" to prevent "messages between users that could lead to illegal activity." *Id.* In doing so, the court found that "[t]hese claims necessarily implicate Grindr's role as a publisher of third-party content," and therefore found the claims barred by Section 230.

Also instructive is the Fifth Circuit's decision in *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008), in which a thirteen-year-old minor opened an account on MySpace – also representing that she was 18 years old – after which the minor plaintiff first communicated with a 19-year-old online, and then was later sexually assaulted after they met in person. *Id.* at 416, 419-22. In holding that Section 230 barred these claims, the district court first hearing the matter noted that "the underlying basis of Plaintiff's claims is that, through postings on *MySpace*, [the assailant and the victim] met and exchanged personal information which eventually led to an in-person meeting and the sexual assault." *Id.* at 419-20 (noting the district

-18-

court's findings) (italics in original). The Fifth Circuit agreed with the finding that Section 230 barred plaintiff's claims, which were asserted as state law negligence and gross negligence claims. *Id.* The appellate court noted that the claims were "merely another way of claiming that *MySpace* was liable for publishing the communications," and since the only way MySpace could have avoided liability was by screening for and blocking the minor and her assailant's profiles and messages, Section 230 applied, and the claims were thus barred. *Id.* at 420.

Another instructive case is *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021), in which the Texas Supreme Court held that Section 230 required dismissal of plaintiff's negligence and product liability claims predicated on user sexual exploitation. In *Facebook*, the plaintiffs, which included minors who had allegedly been sexually trafficked by criminals through the Facebook app, claimed that Facebook should have "verif[ied] the identity and/or age of users," imposed "restrictions on eligibility for accounts," and "warn[ed]" of sex trafficking on its platforms. *Id.* at 85, 93-94. The court ultimately found that these claims treated Facebook as a "publisher" because, whether "couched as failure to warn, negligence, or some other tort of omission," imposing liability would effectively "second-guess[]" Facebook's content moderation decisions. *Id.* at 93.

Each of these cases present essentially the same kind of facts, and the same legal claims, as those presented in this case.

### (b). *Plaintiff's Claims*

The claims of Plaintiff's *Complaint* can be characterized as falling into four types: "Negligence" (Claims 2, 4, and 5); "Strict Liability/Defective Design" (Claim 6); "Torts of Omission/Concealment and Failure to Warn" (Claims 1, 3, and 7); and "Misrepresentation"

-19-

(Claims 1 and 8).

### (i) *Negligence Claims (Claims 2, 4, and 5)*

Plaintiff's "Negligence" claims seek to impose liability on Discord for (i) designing its messaging service to facilitate harmful private communications; (ii) allowing "unsupervised" messaging between users; (iii) failing to require phone number verification or otherwise "screen users"; (iv) failing to "implement . . . parent controls" and "parental notifications" that would monitor and supervise messages; (v) failing to remove user profiles and block messages from adults who message teens; (vi) failing to set *default* safety settings that would block messages between unconnected users; (vii) offering an "open chat function" without sufficient moderation; and (viii) failing to monitor for, report and prevent the use of [its] app[] by sexual predators." (ECF #1, *Complaint*, ¶¶ 120-121 & 147-187).

These claims each amount to Plaintiff seeking to impose a duty on Discord to monitor, screen, and block Plaintiff's communications with other Discord users. All of these duties would require Discord to alter or amend how it publishes, monitors, screens, flags, blocks, or removes users' messages and profiles, *see Jones*, 755 F.3d at 416, including how it offers to its users "neutral tools" that allow users to communicate in different chat forums and formats. *Id.* at 411. In *Jones*, the Sixth Circuit dismissed similar claims as those made in this case, where the plaintiff sought to hold a website liable for the "design" of "content submission" tools because Section 230 bars claims for "providing neutral tools to carry out what may be unlawful." *Id.* at 411, 416 ("[P]roviding *neutral* tools to carry out what may be unlawful or illicit searches does not amount to "development" for purposes of the immunity exception [related to Section 230]); *see also Grindr*, 128 F.4th at 1153 (barring negligence claims seeking

-20-

to hold Grindr liable for offering "features and functions" "meant to facilitate the communication of content of others").

Each of Plaintiff's negligence based claims, Claim 2 ("Negligence - General"), Claim 4 ("Negligence - Unreasonable Design"), and Claim 5 ("Negligent Undertaking"),[15] at root, fundamentally assert claims related to Discord's role as a "publisher," and are accordingly barred under Section 230.

### (ii). *Strict Liability Claims (Claim 6)*

Plaintiff's "Strict Liability/Defective Design" claim seeks to impose essentially similar editorial duties. The *Complaint* faults Discord for providing a service that "allow[s] children to come into contact with child predators, (ECF #1, *Complaint*, ¶ 194), and asserts that Discord should provide "[e]ffective parental controls" to stop harmful message exchanges; reconfigure features to "block[] direct messaging between child and adult users"; block content from "known abusers"; and offer a more restrictive "[c]ontrolled chat" option. (ECF #1, ¶ 202). Similar to the "Negligence" claims, this "Strict Liability" claim would require Discord to more perfectly screen for and block harmful messages and alter the operation of the neutral tools it provides users to send messages. These are effectively the same claims as those held to be barred by Section 230 in *Grindr*, 128 F.4th at 1153-54 (affirming dismissal of claim "that Grindr breached its duty not to design or manufacture defective products by failing to prevent a minor from being matched with predators"), *Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180 (9th Cir. 2024) (affirming dismissal of design defect claims that anonymous messaging features

---

[15] While Claim 3 is also titled as a "Negligence" claim, "Negligence - Failure to Warn," it is addressed later as a "Concealment and Failure to Warn" claim.

exposed users to harmful user posts), and *In re Facebook*, 625 S.W.2d at 93-94 (Section 230 bars "claims alleging that defectively designed internet products allowed for transmission of harmful third-party communications"). The Sixth Circuit has ruled similarly in connection with such claims. *See Jones*, 755 F.3d at 416 (Section 230 barred claim targeting platform's "design" on "content submission" features). Thus, this claim too is barred by Section 230.

*(iii). Concealment & Failure to Warn (Claims 1, 3, and 7)*

Plaintiff's "Torts of Omission/Concealment and Failure to Warn" claims appear to be similarly premised on "second guessing" Discord's "decisions relating to monitoring, screening, and possible deletion of third-party content" pursuant to an existing safety policy. A plaintiff may not avoid the impact and operation of Section 230 by "simply changing the name of [their] theory." *Barnes v. Yahoo!, Inc.*, 570 F3d 1096, 1102-03 (9th Cir. 2009) (plaintiff sought to characterize a claim of failing to block indecent profile content posted by plaintiff's ex-boyfriend as one of a tort violation of Oregon law based on Section 323 of the Restatement (Second) of Torts):

> The Oregon law tort that Barnes claims Yahoo committed derives from *section 323 of the Restatement (Second) of Torts*, which states: One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.
>
> Barnes argues that this tort claim would not treat Yahoo as a publisher. She points to her complaint, which acknowledges that although Yahoo "may have had no initial responsibility to act, once [Yahoo,] through its

-22-

> agent, undertook to act, [it] must do so reasonably." According to Barnes, this makes the undertaking, not the publishing or failure to withdraw from publication, the source of liability. Under this theory, Barnes' cause of action would evade the reach of section 230(c) entirely because it treats Yahoo as not a publisher, but rather as one who undertook to perform a service and did it negligently.
>
> We are not persuaded. As we implied above, a plaintiff cannot sue someone for publishing third-party content simply by changing the name of the theory . . . . Nor can he or she escape section 230 by labeling as a "negligent undertaking" an action that is quintessentially that of a publisher.

*Id.* While the *Barnes* case also involved a separate claim based on the breach of an explicit contractual undertaking by failing to later remove the specifically-identified profiles after initial publication, which was held not barred by Section 230, no such "specific-contract-based" claim is made anywhere in Plaintiff's *Complaint*.

Courts cannot accept attempts to repackage what is in actuality "publisher" actions as "torts of omission" to evade Section 230, as "any liability would be premised on second-guessing" [here, Discord's] "'decisions relating to the monitoring, screening, and deletion of third-party content.'" *In re Facebook*, 625 S.W.2d at 93.

Plaintiff's "fraudulent concealment" claim (Claim 1) alleged that Discord concealed or misrepresented that its content moderation efforts were imperfect and did not match its general safety descriptions. (ECF #1, *Complaint*, ¶¶ 25-28, 92-93). Plaintiff asserts that this amounts to fraud and that Discord was required to disclose that its moderation efforts are imperfect. As an initial matter, Plaintiff acknowledges that Discord *does* disclose and issue transparency reports that – as is the case with any platform that handles an immensely high volume of messages each day – do show that its content moderation efforts are imperfect. (See ECF #1, *Complaint*, ¶ 26 n.15, ¶ 56 nn.65-66). But, similar to the case as presented in *Grindr*, 128 F.4th at 1154, these

-23-

allegations appear to be simply a restatement of Plaintiff's negligence claims and product liability claims already found to be barred by Section 230. Put another way, the only way that Discord could address these aspects of its platform would be "to take certain moderation actions" that would eliminate the alleged discrepancy between Discord's description of its moderation efforts and the "reality" of its moderation – again, "publishing" actions. *Id.* (quoting *Bride v. Yolo Tech.*, 112 F.4th at 1178-79).

Plaintiff's "failure to warn" claims (Claims 3 and 7) assert that Discord had a duty to warn that using its app was "dangerous." (*See* ECF #1, *Complaint*, ¶ 132 (Claim 3) ("Defendant knew, . . . or should have known, that use of its app was dangerous, harmful, and injurious, when used in a reasonably foreseeable manner by minors"); *id.*, ¶ 220 (Claim 7) (claiming that Defendant "fail[ed] to adequately warn of the risk of harm to youth as described herein")). This too is at root a claim based on "publication" choices related to moderation efforts, which fall within the immunity provided by Section 230. As noted by the court's decision in *Bride v. Yolo Tech* (continuing on its discussion of "design defect" claims, as addressed earlier in this *Memorandum of Opinion*, included here for context):

> Plaintiffs first allege product liability claims for design defect, and negligence. The defective design claim alleges that YOLO "developed, designed, manufactured, marketed, sold, and distributed to at least hundreds of thousands of minors" a product that was unreasonably dangerous because of its anonymity. They claim that the bare fact of YOLO's anonymity made it uniquely dangerous to minors and that YOLO should have known this because prior anonymous applications had a deleterious effect on minor users. The negligence claim is similar, claiming that YOLO failed to "protect users from an unreasonable risk of harm arising out of the use of their app[]." Failure to mitigate this "foreseeable risk of harm," plaintiffs claim, makes YOLO liable.
>
> ***Plaintiff's also allege products liability claims under a failure to warn theory. The alleged risks are the same as those for defective design and***

-24-

> *negligence, but the claims are centered more on YOLO's alleged failure to disclose these risks to users when they downloaded the YOLO app. Plaintiffs therefore ask for [various damages] "based on [YOLO's] willful and wanton failure to warn of the known dangers" of its product.*
>
> *At root, all Plaintiff's product liability theories attempt to hold YOLO responsible for users' speech or YOLO's decision to publish it. For example, the negligent design claim faults YOLO for creating an app with an "unreasonable risk of harm." What is that harm but the harassing and bullying posts of others? Similarly, the failure to warn claim faults YOLO for not mitigating, in some way, the harmful effects of the harassing and bullying content. This is essentially faulting YOLO for nor moderating content in some way, whether through deletion, change, or suppression.*

*Bride v. Yolo Tech.*, 112 F.4th at 1179-80 (inserts in original, except for damages reference; emphasis supplied).

The Ninth Circuit, in *Grindr*, held similar claims barred where they sought to impose a "duty to warn . . . about the risks of child sexual exploitation" because such warnings would only be needed to address inadequate policing of third-party content. *Grindr*, 128 F.4th at 1154; *see also Wozniak v. YouTube, LLC*, 100 Cal. App. 5th 893, 914-15 (Cal. Ct. App., 6th Dist. 2024) ("Plaintiff's argument would allow essentially every state cause of action otherwise immunized by section 230 to be pleaded as a failure to warn of such information published by a defendant"; finding that "that construction of the law runs counter to the authority we have summarized above" [discussing Section 230]).

These claims too do not survive the bar created by Section 230.

### (iv). *Misrepresentation (Claims 1 and 8)*

Finally, Plaintiff's misrepresentation claims fail as well. As in *Grindr*, Plaintiff's misrepresentation claims allege that Discord's statements about its content moderation practices and features implied that its platform was "safe for minors." (*See* ECF #1, *Complaint*, ¶¶ 25-33,

-25-

236-239). Also similar to *Grindr*, Plaintiff's claims seek to hold Discord liable for alleged "misrepresentations" by failing to conform its content moderation standards – based on what amounts to its general "aspirational" standards of seeking to provide a platform "safe for minors" – to a level defined by Plaintiff. As the Court in *Grindr* opined, in distinguishing claims based on actual *specific and defined contractual promises* versus general aspirational goals regarding platform content moderation:

> Nor can Grindr be held liable for negligent misrepresentation. This theory of liability faults Grindr for stating that it would maintain a "safe and secure environment for its users" on the App but failing to do so. We have held that § 230 does not bar causes of action seeking to enforce contracts or promises unrelated to a defendant's role as a publisher or speaker of third-party content. In *Barnes* [*v. Yahoo!, Inc.*], 570 F.3d at 1099, a defendant promised to take down indecent profiles impersonating a plaintiff, and in *Estate of Bride* [*v. YOLO Tech.*], 112 F.4th at 1173, a defendant promised to unmask the identities of users sending harassing messages. In each case, the plaintiff sought to hold the defendant accountable for a specific promise or representation, "not for failure to take certain moderation actions," *id* at 1178-79; *see also Barnes*, 570 F.3d at 1107-09. ***By contrast, Grindr's general statement that the App is "designed to create a safe and secure environment for its users," is not a specific promise, but a description of its moderation policy, and thus protected from liability under § 230. Moreover, compared to the aforementioned promises, the statement that an interactive computer service provider will create a safe and secure environment is too general to be enforced.***

*Grindr*, 128 F.4th at 1154 (emphasis and case citation inserts supplied); *see also Bogard v. TikTok Inc.*, 2025 WL 604972, at *18 (N.D. Cal. Feb. 24, 2025) (fulfilling a "duty" to satisfy general promise of "having a system in place to respond to user's complaints about violations of [their] policies" "would necessarily require Defendants to change how they moderate content posted by third parties").

Section 230 applies to these claims as well.

### (v). *The Complaint as Filed*

A closing note. The Court notes that in determining the *Motion to Dismiss*, it evaluates the *Complaint* that was filed in the case, not a reformulation of the claims as the case is argued in later briefing or oral argument. *See Bates v. Green Farms Condo Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) ("Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.") (parenthetical in original). In its *Post-Hearing Brief*, in connection with describing the "misrepresentations" Plaintiff claims regarding Discord's safety provisions, Discord points out, correctly, that Plaintiff appears to be changing its claims in an effort to avoid Section 230:

> ***New alleged misrepresentations***. At oral argument, Plaintiff's counsel did not say that Plaintiff's mother saw, much less relied on, any specific misrepresentation, requiring dismissal of the Complaint for this reason alone. Instead, Plaintiff's counsel for the first time claimed that Discord falsely represented that it (1) has "default safety settings that automatically scan direct messages for explicit images and videos (ECF #49, *Hearing Transcript*, Jan. 28, 2026, at 32:7-9) ("*Hearing Tr.*"); (2) "blur[s] media that may be sensitive in direct messages and group messages with friends" and provides "safety alerts" for when a teen "receives a direct message from a user for the first time" (*Hearing Tr.*, at 32:15-16 and 18-19); and (3) provides "a filter that will automatically block direct messages that contain explicit images" (*Hearing Tr.*, at 32:23-25). But the Complaint never alleges that these features do not exist, only that they are inadequate. (ECF #1, *Complaint*, ¶¶ 72, 76). Plaintiff cannot . . . [now argue] otherwise, and even if she could, Section 230 would still present a bar to her claims.
>
> As to (1), the Complaint does not allege that Discord's default settings do not scan direct messages for explicit images and videos. Instead, the Complaint alleges that this default setting is insufficient because it scans only direct messages from individuals not already connected with the user. (ECF #1, *Complaint*, ¶ 72). As to (2), the Complaint does not allege that Discord's settings fail to blur sensitive media in direct messages or to send safety alerts. Instead, the Complaint alleges these settings are "utterly defective." (ECF #1, ¶ 76). As to (3), the Complaint nowhere alleges that Discord fails to provide a filter that automatically blocks direct messages

> that contain explicit images. Rather, it alleges that the default setting does not enable this filter for *all* direct messages, (ECF #1, ¶ 72) – something Discord never claimed it did. The allegations mentioned at the hearing appear nowhere in the Complaint and should be disregarded for this reason alone.
>
> Moreover, this attempt to twist the Complaint's allegations underscores the incurable problems with Plaintiff's theories. Every version of Plaintiff's claims would require Discord to change its content moderation practices. Arguing Discord need only change how it *describes* its moderation practices is no answer. As the Court observed, this theory "would always require discovery," such that Section 230 would never bar a lawsuit at the outset. (ECF #49, *Hearing Tr.*, at 22:12-13). That would defeat the "immunity from suit" Congress intended. *Jones v. Dirty World Entertainment Recordings LLC*, 755 F.3d 398, 408, 417 (6th Cir. 2014).

(ECF #52, *Defendant Discord Inc.'s Post-Hearing Brief*, pp.5-6) (citing *Bates*) (citations to Discord's prior briefs omitted; citations to the *Hearing Transcript* and *Complaint* retained [and in one case corrected to identify the quoted text], but amended in style to conform to the citation format otherwise used in this *Memorandum of Opinion*; emphasis in original; insert supplied]).

In addition, as noted above, this is not a situation where permitting Plaintiff to amend her *Complaint* to conform to her hearing statements would be of any purpose, as such would simply amount to a refining of the previous description given by Discord of the effectiveness of the moderation and screening practices in place to curb offensive content, which still, at its essence, relate to the *publishing and screening* tools applied by Discord, for which liability cannot attach under Section 230.

### *"Is the Content Complained of by Plaintiff That of Discord or That Originating from Third Parties?"*

Finally, as to the third prong of the determining of whether Section 230 applies – whether the claims asserted by Plaintiff would treat Discord as a publisher "of content provided by a third party," the answer is "yes." Nowhere in Plaintiff's *Complaint* does it accuse Discord

of *creating* the offensive messaging, but rather the Complaint seeks to hold Discord liable for *facilitating* – or failing to moderate – sexually exploitative offensive messaging created by others. (*See, e.g.*, ECF #1, *Complaint*, ¶ 49) ("Over the years, countless criminal cases have exposed the critical role that Discord plays in *enabling* and *facilitating* grooming and other predatory conduct") (emphasis supplied); *id.*, ¶¶ 120-120 (listing various alleged "failures" to moderate, control, or limit access to harmful conduct created by others)). The fact that Discord may have provided the "tools" by which Plaintiff and her alleged abusers exchanged messages, to "carry out what may be unlawful or illicit" does not make Discord a "content provider," but rather treats Discord as a "publisher" of (offensive) messaging created by third parties.

### 2. *First Amendment Considerations & Remaining Asserted Grounds for Dismissal*

As noted earlier, Defendant's *Motion to Dismiss* identified five bases on which it claims Plaintiff's Complaint should be dismissed. (*See, supra*, p.5). The fourth and fifth bases related to Plaintiff's since-abandoned 9th and 10th claims ("Receipt, Distribution, and Possession of Child Pornography" and "Failure to Report Child Abuse," respectively, each asserted as a violation of 18 U.S.C. § 2255), are no longer at issue. The second and third bases identified were based on the First Amendment (second ground) and various pleading defects related to causation, inapplicability of product liability law under Ohio law, no identification of a duty under Ohio negligence law, and lack of pleading specificity under Federal Rule of Civil Procedure 9(b) (third ground). Because the first ground for dismissal of all of Plaintiff's remaining claims, Section 230 of the Communications Decency Act, is dispositive of the *Complaint* in its entirety, This Court does not address here these other alternative grounds. *See, e.g., A.B. v. Salesforce, Inc.,*

123 F.4th 788, 792 (5th Cir. 2024) ("Because we can resolve this appeal by answering only the second certified question [relating to the immunity provided to interactive computer service providers under Section 230 for material posted on the internet service as a "publisher" or "speaker"], we do just that.") (citing *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 348 (2022) (Roberts, C.J., concurring in the judgment) ("If it is not necessary to decide more to dispose of a case, then it is necessary *not* to decide more") (emphasis in original)); *Doe v. Grindr, LLC*, 2023 WL 7053471, at *1 (M.D. Fla. 2023) ("Because the first basis is dispositive [Section 230], the Court does not reach the others").

### III. CONCLUSION

Accordingly, for the reasons set forth above, *Plaintiff's Motion to Transfer Venue to the Northern District of California Under 28 U.S.C. § 1404(a)*, (ECF #45), is DENIED, and *Defendant Discord Inc.'s Motion to Dismiss*, (ECF #29), is GRANTED, with prejudice.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: April 20, 2026

-30-